(110 App. Div. 490)

### PEOPLE v. BROWN.

(Supreme Court, Appellate Division, Fourth Department.  January 3, 1906.)

1. ARSON—EVIDENCE—PREVIOUS FIRES.

In a prosecution for arson, alleged to have been committed with intent to secure insurance money, admissions made by defendant to an insurance adjuster that he had had fires in other buildings than the one in question were inadmissible.

[Ed. Note.—For cases in point, see vol. 4, Cent. Dig. Arson, § 59.]

2. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY.

Such evidence having been admitted, it was error to exclude evidence offered by defendant that one of the other fires referred to was in a building occupied by defendant's brother.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 861.]

3. ARSON—EVIDENCE—ADMISSIBILITY.

In a prosecution for arson, alleged to have been committed with intent to secure insurance money, testimony of the chief of the fire department that he had had a man watching the building at night for about a week after the fire was inadmissible.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 1036–1038.]

4. CRIMINAL LAW—EVIDENCE—EXPERT TESTIMONY—OPINIONS AS TO PHYSICAL CONDITIONS.

In a prosecution for arson, alleged to have been committed with intent to secure insurance money, an opinion of the chief of the fire department that certain conditions produced in the building by the opening of doors and windows would create a "nice kind of a draft" was on a subject not proper for expert evidence, and was inadmissible.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 1059.]

**5. WITNESSES—IMPEACHMENT—CONTRADICTORY STATEMENTS.**

In a prosecution for arson, alleged to have been committed with intent to secure insurance money, declarations, made 10 days after the fire, by a witness who had testified on the trial that he had used a brush and oil on the floor, to the effect that the oil placed on the floor was put there "for a purpose," did not contradict the witness, nor affect his credibility, and were improperly admitted.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, § 1247.]

**6. ARSON—EVIDENCE—ADMISSIBILITY.**

In a prosecution for arson, alleged to have been committed with intent to secure insurance money, evidence of a demand upon defendant to allow an examination of his goods and his refusal so to do was inadmissible.

**7. CRIMINAL LAW—APPEAL—HARMLESS ERROR.**

Errors committed in a criminal trial should not be disregarded, and the judgment affirmed on appeal, unless such errors were harmless and could by no possibility have prejudiced defendant.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Criminal Law, §§ 3090–3099.]

Spring, J., dissenting.

Appeal from Trial Term, Herkimer County.

Burt C. Brown was convicted of arson in the third degree, and appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

H. A. De Coster and A. M. Mills, for appellant.

George W. Ward, Dist. Atty., for the People.

WILLIAMS, J. The judgment should be reversed, the verdict set aside, and a new trial granted.

The indictment was filed December 7, 1903, and charged the crime as having been committed November 19, 1903, at Little Falls, N. Y. The building burned was owned by one Conyne and occupied by the defendant as a furniture store. It contained a stock of goods owned by defendant. The building was insured for $9,500, and the goods for $13,000. The intent alleged was to destroy the property and to secure the insurance money. The trial commenced March 17, 1905, and continued until March 24, 1905, when the verdict was rendered. A motion for a new trial was made upon the minutes of the court, upon the ground that the verdict was contrary to the evidence and the law, and upon exceptions to the admission and rejection of evidence and to the charge. This motion was denied.

While the record may not show the facts, still it was stated upon the argument that the defendant Jones had been tried and convicted, and was serving his term in state prison, the case having been affirmed by this court and the Court of Appeals, and that two prior trials of this defendant had been had, resulting in disagreement of the juries. The court, in the course of the charge, referred to the former trials that had taken place. We have examined and considered the evidence contained in this record, and conclude that the verdict was not, within well-established rules, so contrary to or against the weight of the evidence as to require the reversal of the judgment for that reason. The questions of fact were close, however, as appear not only from an ex-

amination of the record, but from the fact that on two former trials
the juries were unable to agree upon a verdict of guilty.    This being so,
we are called upon to consider carefully the exceptions taken during
the trial, with a view to determining whether the rights of the defend-
ant were fully protected, or whether his conviction was, or may have
been, brought about by reason of error committed by the court in the
conduct of the trial.    Our attention is called to various alleged errors,
which we will consider.

1. For some years prior to 1901 the defendant resided and carried
on business at Fulton, Oswego county, and the defendant Jones was
in his employ there.    In 1901 the defendant removed to Syracuse, and
carried on business there for about a year, and the defendant Jones
was in his employ there also.    He then removed to Little Falls, and
went into business there, and so continued until the fire in question
took place, and the defendant Jones was in his employ at that place.
There was a fire in defendant's store at Little Falls, November 10,
1903, only a few days before the fire in question, but it was extinguished
before a great deal of damage was done.    An insurance adjuster came
to Little Falls, November 17, 1903, and had a talk with defendant,
and early in the trial this adjuster was called as a witness for the peo-
ple, and gave the following evidence under defendant's objection and
exception:

"I asked Mr. Brown if he was the man who had a fire at Syracuse.    He
replied, 'Yes.'    I asked him if he was the man who had a fire at Baldwins-
ville.    He replied, 'Yes,' but that his brother occupied that building.    I asked
him if he was the man who had a fire at Fulton, and he replied, 'Yes.'"

After this evidence had been given, defendant moved to strike it out,
and the motion was denied, with exception.    Other evidence was given
by the witness relating to the loss of November 10, 1903, but was in no
way connected with the evidence so objected to.    Later in the trial the
defendant called his brother, and offered to show by him that when the
fire at Baldwinsville took place he occupied the building.    This was
objected to by the district attorney, and the objection sustained, with
exception.    It can hardly be doubted that the reception of this evidence,
and the refusal to strike it out, was erroneous, especially in view
of the refusal to allow the defendant to make an explanation by his
brother, favorable to himself, as to the Baldwinsville fire.    The people
were permitted by this evidence to show that the defendant, during the
two years prior to the time of the fire in question, had had fires at Ful-
ton, at Baldwinsville and at Syracuse, in addition to the fire at Little
Falls.    These fires were shown by the most satisfactory evidence pos-
sible, the admissions of the defendant himself, which he could not con-
trovert unless he went upon the stand as a witness himself, and he was
not permitted to prove by his brother that one of these fires was not
his.    It was not offered to prove by the brother that the Baldwinsville
fire was not incendiary, but that it was not defendant's fire at all, it
was his brother's, and this even was refused.

There is no theory upon which this evidence was admissible, unless
it was upon the question of motive or intent to commit the crime in
question.    We are unable to see how it was material for any such pur-
pose.    The transaction between these parties, including the conversa-

tion with reference to his loss in the fire of November 10, 1903, may have been competent in the case. It was not objected to anyway. But the evidence which was objected to was not competent, merely because the transaction generally and the other conversation was. It did not creep in incidentally, as is now claimed. Its reception was persistently objected to, and a struggle was made to have it striken out after it had been admitted. The district attorney insisted upon its reception and retention, and the court ruled with him. The evidence had no proper bearing upon the question of motive or intent. It was very dangerous evidence in the case. It was not harmless, as now claimed. It must have had a serious effect upon the minds of the jury, and may well have induced a verdict of guilty, which would not otherwise have resulted. In a close case like this, jurors were liable to reason that the defendant had recently had so many fires in his buildings that he must have been responsible for them, and very likely was liable for this fire in question. The jury would necessarily regard this evidence as important, because of the struggle to get it in the case and to keep it out. No instruction was given by the court limiting the effect to be given to it. On the contrary, in the charge they were instructed that they should carefully consider all the evidence in the case, and base their verdict on such evidence. What use the district attorney made of this evidence in his address to the jury does not appear. He had a right to call the attention of the jury to the fact that the defendant had had all these former fires in his buildings, as circumstances in the case, because the evidence was admitted and retained without any limitation as to its effect, or any instruction to the jury as to the force they should give to it. We cannot say that the jury did not conclude that the defendant was guilty of this fire by reason, among other considerations, of the fact that he had had so many fires in his buildings-before. It is said that this evidence was given in the Jones Case, and yet there was an affirmance in that case by this Court and the Court of Appeals. In that case the evidence came into the case by way of the cross-examination of this defendant, who was a witness there. In this case the defendant was not a witness, and this evidence was not given to affect his credibility as a witness, but as direct evidence of defendant's guilt.

2. The people were allowed to show by the chief of the fire department that from the time of the fire, November 19th, until November 25th, he had one of his men watching the premises at night. This was objected to and exception taken. It was incompetent evidence against the defendant. It was in effect giving the action of the chief as indicating his opinion that the fire was suspicious and the premises needed watching to prevent a further fire. This evidence was objected to and exception taken. The people were allowed also to give the opinion of the chief as to the effect of certain conditions in the building, produced by opening doors and windows, that it would create a "nice kind of a draft." It was not a proper subject for expert evidence, and the chief was no more of an expert than the jurors themselves. The jurors were in effect allowed to rely upon the opinion of the chief, instead of using their own judgment, based upon the con-

ditions proven to exist in the building. This evidence was given under objection and exception.

3. The people were allowed to prove the declarations made by defendant's witness Moran, 10 days after the fire of November 10, 1903, that the oil on the floor of the workshop of defendant was put there "for a purpose." It was given under the claim that it was proper as affecting Moran's credibility. It did not, however, tend to contradict what he had sworn to on the trial—that he had used a brush and oil in sweeping the floor. This remark was prejudicial to the defendant, and was improperly received as evidence under objection and exception.

4. The admission of evidence with reference to the demand upon the defendant to allow an examination of his goods and his refusal, and the exclusion of evidence by defendant's wife as to directions given by her to Jones as to where he should send the telegram to defendant in Rochester, were errors of minor consequence, under objection and exception, but should be considered with the other more serious ones as calling for a reversal of the judgment.

Other rulings are suggested by counsel as erroneous, but they call for no particular consideration in this opinion. The rule is well settled that errors committed in a criminal trial should not be disregarded, and the judgment affirmed on appeal, unless it can be said such errors were harmless, and could by no possibility have prejudiced the defendant. Stokes v. People, 53 N. Y. 164, 13 Am. Rep. 492; People v. Koerner, 154 N. Y. 355, 48 N. E. 730; People v. Wennerholm, 166 N. Y. 567, 60 N. E. 259.

Under this rule we should reverse this judgment and grant a new trial, for the errors hereinbefore referred to. All concur, except HISCOCK, J., who concurs on first two grounds stated in the opinion, and SPRING, J., who dissents.

SPRING, J. (dissenting). The defendant was indicted for arson with one George Jones, and they elected to have separate trials, and the conviction of Jones was affirmed by this court (100 App. Div. 511, 91 N. Y. Supp. 1108) and also by the Court of Appeals (181 N. Y. 516, 73 N. E. 1129). The specific charge was the attempted burning of the stock of goods owned by the defendant in Little Falls, and the motive to obtain the insurance money; for the evidence shows quite clearly that the property was considerably overinsured. If the crime was committed, the fire was set by Jones, who was in the employ of the defendant; for the latter was in Rochester at the time. An examination of the record satisfies me that there was abundant evidence given upon the trial to sustain the verdict of the jury. The trial was protracted, was bitterly contested, and inevitably some improper evidence was received or some proper evidence excluded. It is not a case, however, calling for a microscopic hypercritical investigation of every exception contained in the record.

The fire set out in the indictment occurred November 19, 1903. There had been a previous fire on the 10th of the same month of these same goods, which had been stopped, and a claim for damages had been presented to the insurance companies, and an investigation was set on foot by representatives of these companies for the purpose

of ascertaining whether the fire was a suspicious one, and, if so, the policies were to be canceled. As a result of this investigation the policies were canceled on the 17th, but such cancellation could not become effective within five days. The theory of the prosecution was that the defendant realized the necessity of causing the destruction of his property by fire before the expiration of the five days, and hence, the fire on the 19th while the policies were still in force. On the 17th and during the explorations of the adjusters of these insurance companies, they had a conversation with the defendant, which is narrated by one of them, the people's witness Tyler. During this conversation he asked the defendant "if he was the man who had a fire at Syracuse. He replied, 'Yes.'" And the same inquiries as to fires at Baldwinsville and Fulton were propounded, and elicited affirmative answers, and the competency of this evidence was properly raised by the defendant's counsel. As already suggested, these inquiries were made while the agents of the insurance companies were engaged in the sifting process as to the fire of November 10th, in order that they might ascertain whether they had just cause to terminate the existing insurance. As a part of this probing they inquired of the defendant as to former fires of his goods. These inquiries did not necessarily imply an attack upon his integrity; but the frequency of these fires, even though unintentionally caused, might be an adequate justification for annulling the insurance. During the subsequent part of the trial there was no intimation, so far as the record shows, that these fires were incendiary. No allusion to the subject was made by the trial judge in his charge, and he was not requested to advise the jury that the evidence did not tend to implicate the defendant as to these fires. Nor does the record show that during the summing up the subject of these previous fires was alluded to in any way whatever. Had the charge been made by the district attorney that they were of incendiary origin, the astute counsel for the defendant would have been alert to correct the impression. On the contrary, as we will observe later, all parties disclaimed that the evidence had any such effect or tendency.

This same class of evidence comprised a part of the alleged objectionable evidence on the trial and conviction of Jones, and was urged strenuously as a reason for the reversal of the judgment of conviction. On that trial Girvan, also an agent of one of the insurance companies, was allowed to testify that Brown, the present defendant, said that a fire had occurred at Fulton while he was keeping a store at that place. Again, the defendant testified on behalf of Jones on that trial, and was cross-examined as to these previous fires at considerable length. Jones was in the employ of Brown when the fire at Fulton occurred, and if the evidence is vicious, as is contended, it was equally so against Jones. In any event, the question of the admissibility and effect of this class of evidence was in the preceding record, was pointedly pressed upon the court by the appellant's counsel, and, while no opinion was written either in this court or in the Court of Appeals, yet we cannot assume that so vital a proposition was utterly overlooked by both appellate courts.

Passing that, however, I think, as an original proposition, the evidence was admissible. Certainly evidence pertaining to the fire of

November 10th was competent. That was not an unrelated crime in the sense in which that term is used. The same goods were involved in the same building, and they were in the custody of the same parties, and there was the same excessive insurance, which, it is claimed, induced each fire. The question of the defendant's motive was an important element in the case of the prosecution. The fact that the insurance companies had canceled their policies, to become operative five days after the notice was served upon the defendant, and the fire actually occurred within that brief space of time, was important. The motive of the defendant to burn his property was thus elucidated. The evidence criticised was elicited while the investigation preceding the cancellation was in progress. The evidence even of the previous fires was a connected part of this scrutiny. It bore upon the question of motive and illustrated the mental operations of the defendant. The prosecution was not necessarily confined to the proof of the fact that the policies were canceled. The people were entitled to prove that the companies were justified in annulling them and that the defendant knew the examination was for the purpose of revoking the insurance, and he was directly connected with what occurred. The information, in part at least, on which the companies determined to cancel, was derived from the defendant, and that information the plaintiff was entitled to have before the jury. The disclosure may possibly have tended to inculpate the defendant with some other offense, but that collateral circumstance does not render the evidence inadmissible.

In explanation or illustration of the motives or mental operations of one on trial under an indictment much latitude has been given to the prosecution. In People v. Harris, 136 N. Y. 423, 33 N. E. 65, the defendant was on trial for the murder of his wife, and the crime was committed January 31, 1891. The district attorney was permitted to prove, under objection, that in September preceding the defendant had illicit intercourse in a hotel with a young woman, and in a conversation with her he was overheard to suggest to her that she marry some old man of wealth and that the defendant "could give him a pill and get him out of the way." The damaging character of this evidence was apparent, but its admissibility was sustained. The court in commenting upon it say:

"I consider that this evidence was admissible, because it bore upon the question of motive and tended to repel that strong presumption which would militate in favor of a husband, when on trial for the murder of his wife. The rule that evidence in criminal cases should be confined strictly to the question in issue is not infringed upon, because the evidence offered, while tending to prove some essential fact in the guilt of the accused, may also prove the commission of another offense. Such evidence is relevant and admissible, whenever its presence goes to sustain the charge by showing scienter or motive; for these facts are essential elements of a crime. * * * If this conversation, so overheard by the witness, furnished any clue to the existence of motives, we cannot assume nor say that it was meaningless or immaterial. The weight and importance to be attached to it were for the jury to consider, in the light of all the circumstances."

See, also, People v. Scott, 153 N. Y. 40, 46 N. E. 1028.

In Stephen's Digest of the Law of Evidence, art. 8, the principle is thus stated:

"When a person's conduct is in issue or is deemed to be relevant to the issue, statements made in his presence and hearing, by which his conduct is likely to have been affected, are deemed to be relevant."

These inquiries reveal to the defendant that he was suspected of careless management of his property, or of the graver offense which resulted in the former fires. At the particular juncture of this conversation he may have realized that the policies were to be canceled, and he may then have conceived the purpose to burn his goods before the expiration period was reached.

It is, however, claimed that the defendant should have been permitted to prove that the previous fires were not of incendiary origin. Again it will be useful to turn to the record. Emmett Brown, a brother of the defendant, testified as a witness in his behalf. He lived in Baldwinsville and occupied a store once owned by his brother. The following occurred:

"Q. Was there a time when the building that you occupied was on fire? By the District Attorney: I object to that as incompetent, irrelevant, and immaterial. By the Court: I don't know about that. Isn't that quite an issue to open up? There isn't any proof that there was any fire there of incendiary origin. Mr. Mills: No, not a particle. The Court: Then I don't think we will indulge in it. The objection is sustained. (Exception to the defendant.)"

The only pertinence to this evidence must have been to show that the fire was not of incendiary origin. The court, realizing that there was no proof justifying that suspicion, pointedly so stated to the counsel for the defendant, and the latter with equal emphasis acquiesced in this construction of the evidence. There was no dissent by the district attorney, and thus the court and both parties, openly before the jury, were committed to the proposition that there was no suspicion by reason of these former fires, and hence the evidence was unnecessary. The most that the defendant could have accomplished by the excluded testimony would have been to disprove in words that the fire was set by him, and in view of the disavowal there was no accusation to rebut. A defendant, even in a criminal case, cannot openly assent to a proposition which governs the course of the trial judge in the reception or exclusion of evidence, and then repudiate the course adopted. He may not deceive the judge and then profit by his duplicity.

It is claimed for the evidence in the prevailing opinion that the purpose was to show that the witness, not the defendant, was responsible for the fire. No such claim was suggested on the trial. It was of no importance whose fire it was, unless suspicion might have been imputed to the defendant concerning it.

The people were permitted to prove that after the fire some one of the fire department was watching the property or building nights; and it is urged that this evidence is incompetent. Before this evidence was objected to, the proof showed without objection that the firemen were in the building the greater part of the time after the fire, and the defendant's counsel had elicited the fact that "some more of the fire department was in charge at night." Proof had been given that excelsior and other material were found packed in between some furniture of the defendant and the wall or partition; that this furniture was black-

ened by fire, and the excelsior showed the presence of kerosene oil. To repel the effect of this evidence the defendant's counsel showed on cross-examination that the defendant and Jones were in the building daily and had access to it at all times. The inference might be that they would have removed these evidences of guilt if they had been guilty. To counteract the force of this testimony the people proved that there was no opportunity to spirit away this material, for a fireman was watching the property all the time. I think the evidence was competent.

The opinion of the chief of the fire department that a draft would be created by the opening of the trap door and the lowering of the window may have been improperly received; but the fact is self evident and the admission of the opinion must have been harmless.

Henry Moran was a witness for the defendant. He had been in his employ in this building, and testified that the kerosene oil which had been found upon the floor after the fire of November 10th had been placed there by him to aid in sweeping or cleaning the floor. He testified that he would let the oil drop from a brush, "and then we would stamp it on the floor to get the rest out, so that it would not stick the floor up." He was asked on cross-examination if he did not tell Sanders and Billinger on the morning of November 20, 1903, that the oil "was put there for a purpose," and he answered in the negative. Billinger and Sanders were permitted to contradict Moran as to this specific question. I think it was competent to minimize or destroy the inference, properly to be deduced from his direct examination, that the oil came upon the floor innocently and naturally.

The other objections, I think, are unimportant. It is not wise to grant a new trial in a criminal action after a long trial for immaterial error. If that course is to be adopted, few judgments of conviction will stand.

The judgment of conviction should be affirmed.