James D. Hopkins, J.
The defendant has moved to set aside the verdict of the jury finding him guilty and for a new trial pursuant to section 465 of the Code of Criminal Procedure. The indictment accused the defendant under two counts of violations of the Education Law. The first count alleged that the defendant, a chiropractor, unlawfully practiced medicine without a license (Education Law, §§ 6501, 6502, 6513). The second count alleged that the defendant unlawfully used the title “ Doctor ” or an abbreviation thereof (Education Law, § 6513, subd. 2, par. c). Both are misdemeanors.
The trial lasted five days. The evidence of the People, represented by the Attorney-General, consisted mainly of the testimony of two employees of the State Education Department who visited the defendant’s office as investigators in the guise of patients. The evidence of the defendant consisted of the testimony of character witnesses, and the testimony of the defendant himself. The issues of fact arising from the testimony were sharp and closely contested. The jury retired for deliberation after lunch at 1:45 p.m. After having been sent to dinner at 6:00 p.m., it returned again to its deliberations at 7:30 p.m. It then requested further instructions from the court at 7:50 p.m., and after having received them, again retired. At 10:15 p.m. it returned with a verdict of guilty against the defendant on both counts in the indictment.
The defendant’s motion rests on an incident which occurred after the jury had retired. During the course of the trial there had been received in evidence as People’s Exhibit 4 the business card of the defendant. The card bore the legend ‘ ‘ Dr. Michael L. Bartone ”, the defendant’s address, and office hours. After the jury retired from the courtroom at the close of the trial, the court, following the procedure laid down in People v. Snyder (297 N. Y. 81) asked whether the defendant consented that the exhibit be sent to the jury room if it were requested by the jury. The defendant refused to give his consent. The court then stated to both counsel that if the jury requested the exhibit, the jury would have to be brought down to the courtroom. The jury, upon beginning its deliberation, made a request *928 for the exhibit to the deputy sheriff in attendance. The deputy sheriff asked the counsel for the People for the exhibit, and counsel for the People gave it to the deputy sheriff, who thereupon delivered it to the jury. Soon after the exhibit was in the possession of the jury, counsel for the defendant discovered it, and made immediate protest and objection to the court. The court then ascertained the circumstances by which the jury obtained the exhibit from the deputy sheriff and counsel for the People, who said that he was unaware of the provisions of section 425 of the Code of Criminal Procedure, and that it was his understanding that counsel for the defendant had consented to the taking of this exhibit to the jury room. The exhibit remained with the jury until the jury was sent to dinner at 6:00 p.m.
The defendant contends that the possession of the exhibit by the jury during its deliberations without his consent and over his objection was so prejudicial to his rights that a new trial must be granted. Sections 463 and 465 of the Code of Criminal Procedure permit the trial court to grant a new trial when a verdict is contrary to law, but conditions its relief to eases in which the defendant’s “ substantial rights have been prejudiced.” We must turn, therefore, to a consideration of whether defendant’s substantial rights were infringed by the incident which took place.
Section 425 of the Code of Criminal Procedure provides that “ The court may permit the jury, upon retiring for deliberation, to take with them any paper or article which has been received as evidence in the cause, but only upon the consent of the defendant and the counsel for the people.” It is accordingly clear that the defendant may refuse to consent that the exhibits in evidence be taken by the jury into the jury room during its deliberations. The dimensions and purpose of this right bestowed on the defendant must be viewed against the historical background of the section.
Section 425 has been untouched since its original enactment at the time of the adoption of the Code of Criminal Procedure (L. 1881, ch. 442). The code, though reported in 1849 by the Commissioner on Practice and Pleadings, and revised in 1879, was not established as law until 1881, 32 years later. Its object was to furnish a uniform, harmonious and comprehensive system of criminal practice (People v. Hovey, 92 N. Y. 554), and is to be interpreted in view of the existing procedure (People v. Farini, 239 N. Y. 411). At common law, the practice relative to the use of exhibits by the jury was assimilated in civil and criminal cases (Higgins v. Los Angeles Gas & Elec. Co., 159 *929 Cal. 651). The rule was that exhibits other than writings might be given to the jury in the court’s discretion. Only papers under seal could be sent to the jury by the court. The reason for the rule lay in the supposed fact that juries were composed of unlettered men, to whom a writing would be meaningless, but that they might compare their knowledge of seals with the seal on a paper (23 C. J. S., Criminal Law, § 1369, p. 1030 et seq.; State v. Lord, 42 N. M. 638). The distinction between tangible exhibits and written exhibits, whether sealed or unsealed, has now disappeared in civil cases in New York with the disappearance of the reason for the distinction at common law, and the court may in its discretion determine whether a jury may take exhibits with them on retirement for deliberation (6 Carmody-Wait on New York Practice, p. 639 et seq.)
The common-law rule, however, was clearly modified in criminal cases in New York by section 425 of the Code of Criminal Procedure. Elsewhere, the great majority of States has approved the use of the same rule in both civil and criminal causes, has allowed the court to determine as a matter of discretion whether the jury may have the exhibits while it is deliberating (Abbott on Criminal Trial Practice [4th ed.], § 694, p. 1319, et seq.). In some States depositions placed in evidence are excepted from the rule, because of the presumed advantage they might exercise over oral testimony. In the Federal courts, any paper or article received in evidence may be taken by the jury at the discretion of the court (Housel & Walser on Defending and Prosecuting Federal Criminal Cases [2d ed.], § 525, p. 663 et seq.). Illinois and Georgia apparently follow the New York rule in criminal cases (People v. Spranger, 314 Ill. 602; Spence v. State, 96 Ga. App. 19).
Against this background, section 425 would appear to have a real, and not nominal, importance. Its purpose necessarily must be judged to prevent unsupervised use of exhibits in the jury room, if the defendant does not consent. That seems to be the conclusion of the Court of Appeals in People v. Snyder (297 N. Y. 81, 92) when it said as dicta that “ exhibits may not be taken to the jury room, however, where they are not under the watchful eye of the court, unless consent be given by the defendant ”. The Legislature, in enacting section 425, could have had no other design than to change the common-law practice in criminal cases so as to require the consent of the defendant before allowing exhibits to be sent to the jury.
Early cases, in applying the section, placed a narrow construction on its language (People v. Gallagher, 75 App. Div. 39, affd. 174 N. Y. 505 [1902]; People v. Dolan, 186 N. Y. 4 *930 [1906]), although they are distinguishable on the facts from the case at bar. In People v. Gallagher (supra), the defendant or his counsel did not state whether they objected to the use of the exhibits by the jury when asked by the court, nor was protest made until after the jury rendered its verdict. In People v. Dolan (supra), the defendant did not object to the presence of the exhibits in the jury room until after the verdict. Here the defendant did not give his consent when asked, and objected as soon as he found that the jury had the exhibit. A later case (People v. Moskowitz, 38 N. Y. S. 2d 189 [1941]) held that the court’s action in permitting exhibits to be taken by the jury over the objection of the defendant was not sufficient in itself to justify reversal of a conviction, since they had been read to the jury during the trial. The court did, however, reverse the conviction on another ground, and it must be noted that this decision antedated later expressions by the courts.
The more recent decisions confirm the interpretation of section 425 as a substantial right of the defendant (People v. Snyder [1947], supra; People v. Dockum, 285 App. Div. 510 [1955]). People v. Snyder (supra) though not involving the unauthorized use by the jury of exhibits, stressed the significance of the section by condemning the practice of asking the defendant before the jury as to whether the exhibits were consented to be taken before the jury. People v. Dockum (supra) held that it was ‘ ‘ substantial error ’ ’ to allow exhibits to go to the jury without the defendant’s consent.
The consideration which section 465 of the Code of Criminal Procedure directs shall be given on a motion for a new trial toward whether a defendant’s substantial rights have been prejudiced is similar to the duty which an appellate court assumes under section 542 of the code to determine whether an error “ affect[s] the substantial rights of the parties” in an appeal from a judgment of conviction. It has been said that “ The rule that an error committed upon a trial may be overlooked when the party complaining was not prejudiced thereby is only applicable in cases where the error could by no possibility have produced injury” (People v. Altman, 147 N. Y. 473, 477-478; see, also, People v. Brown, 110 App. Div. 490, affd. 188 N. Y. 554; People v. Taylor, 171 Misc. 767; cf. Little v. United States, 73 F. 2d 861).
It may not be asserted that the exhibit herein in question did not have any bearing on the deliberations of the jury. Although the exhibit has an immediate connection to the count in the indictment charging the defendant with the appropriation of the title of “ Doctor ”, its potential use by the jury in consider *931 ing the other count alleging the unlawful practice of medicine could have had wide flung and prejudicial effect on the defendant in the unrestricted discussions of the jury. Upon its actual use and effect during the deliberations of the jury, we need not speculate; our consideration ends when the test is met that a right of the defendant was transgressed, and that there is a possibility that the error could have produced injury (People v. Altman, supra). As the court in People v. Dockum (supra, p. 513) stated: “ What use was made of them we do not know, but we may not assume that the presence of such exhibits with the jurors during their deliberations did not influence their verdict.” Nor is it material that the jury properly decided the case on the evidence adduced; if the error may have influenced the verdict, the error cannot be weighed as technical rather than substantial (People v. Mleczko, 298 N. Y. 153, 162).
The defendant’s motion for a new trial is granted. Submit order on notice.