IN THE MATTER OF HENRY TUGENDER, APPELLANT, BE-FORE THE BOARD OF PSYCHOLOGICAL EXAMINERS.

Superior Court of New Jersey
Appellate Division

Submitted September 14, 1982—Decided September 28, 1982.

Before Judges BOTTER, POLOW and BRODY.

*Alan J. Karcher,* attorney for appellant (*Alan J. Karcher* on the brief).

*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney for respondent Board (*James J. Ciancia,* Assistant Attorney General, of counsel, and *Sandra Y. Dick,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

POLOW, J. A. D.

Appellant Henry Tugender attacks a ruling of the New Jersey Board of Psychological Examiners (Board) which prohibits his

use of the title Doctor and the designation Ph.D. in practicing his profession as a licensed psychologist in this State. The Board's determination was based upon the admitted fact that his doctorate was granted by an unaccredited institution. Appellant urges that the Board's action was arbitrary, capricious and *ultra vires* and should be overturned. We disagree and affirm.

█ Tugender has been licensed to practice psychology in this State since 1968, based upon his master's degree in psychology from Long Island University and eight years of clinical experience. The law did not then mandate that the applicant hold a doctor of philosophy degree in psychology, as it presently does for licensure as a psychologist. *N.J.S.A.* 45:14B–17.

Tugender testified that after earning his master's degree he attended the Arizona State University doctoral program but became disenchanted because of conflicting philosophies espoused by competing faculty factions. He then returned to New York where he learned of an "innovative" new school in Florida, East Coast University, offering courses leading to a Ph.D. in psychology. He seized the opportunity since it required only two eight-week summer residencies. The balance of the degree requirements could be met by independent study courses which the faculty reviewed by correspondence or by telephone. He was awarded a doctoral degree from East Coast University in 1970, subsequent to his licensure as a psychologist in this State. He immediately began to use the titles Doctor and Ph.D. with his name in all professional activities and to hold himself out as a Doctor of Philosophy in all contact with patients and colleagues.

East Coast University, now defunct, was never accredited by the State of Florida or any other state or by any regional association. When the Board became aware of Tugender's status he was advised he could no longer hold himself out as a Doctor of Philosophy. Upon his objection a hearing was conducted, following which the Board ruled that his use of the

designation Ph.D. violated the Practicing Psychology Licensing Act, *N.J.S.A.* 45:14B–1 *et seq.* Accordingly, he was ordered to "cease and desist in connection with his professional psychological practice the use of the titles 'Dr.' or 'Ph.D.' . . . ." The final determination imposed no monetary sanction; however, Tugender had previously submitted payment of $500 "to be held in escrow pending the ultimate disposition of this controversy." Thus, we assume that if it has not already done so, the Board intends to reimburse him.

Tugender challenges the statutory authority of the Board to prevent his use of the questioned titles based upon his "degree" from East Coast University. He contends that the Board lacks the power to prohibit his use of such titles and that its action contravenes the public policy of the State of New Jersey.

*N.J.A.C.* 13:42–4.1(a)(1)(xvii) describes as "misconduct" failure of "licensees to observe and be guided by the ethical standards of the American Psychological Association [APA] . . . ." Those ethical standards include the following relevant requirement:

Principle 4. Public Statements

a. When announcing or advertising professional services, psychologists may list the following information as a description of provider and services provided: name, highest relevant academic degree *earned from a regionally accredited institution* . . . . [Emphasis supplied]

Tugender does not claim that East Coast University was regionally accredited. Hence, his use of the titles "Dr." and "Ph.D." violates the cited APA ethical standards incorporated as misconduct in the agency's regulations. His appellate brief ignores the regulation. Presumably he argues that such a regulation is *ultra vires.* We disagree. Such an administrative regulation enjoys a presumption of validity. It is clear and reasonable on its face; thus, appellant has the burden of proving it arbitrary, unduly onerous or unreasonable. *N.J. Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 560–561 (1978); *In re Weston,* 36 *N.J.* 258, 263–264 (1961), *cert.* den. 369 *U.S.* 864, 82 *S.Ct.* 1029, 8 *L.Ed.*2d 84 (1962). This he has failed to do.

Tugender suggests that the Board has no power to interfere with his right to earn a livelihood or to evaluate his right and

competence for use of the designation of "Ph.D." We find those arguments totally unpersuasive.

 Statutorily empowered agencies, especially those regulating professions, have implied powers to effectuate their purposes. *In re Heller Suspension,* 73 *N.J.* 292, 303 (1977). Hence, "the powers of an administrative agency should be liberally construed to permit the agency to achieve the task assigned to it." *Ibid.* (quoting *In re Banking & Ins. Comm'r v. Parkwood Co.,* 98 *N.J.Super.* 263, 271–272 (App.Div.1967)). Furthermore, an administrative agency is expected to act to accomplish its goals even without prior specific rules or regulations. *Sheeran v. Progressive Life Ins. Co.,* 182 *N.J.Super.* 237, 246–249 (App. Div.1981). Thus, members of the profession of osteopathy who have obtained medical degrees from accredited osteopathic institutions based upon courses of study and training fully equal in substance and quality to that provided in allopathic medical schools may nevertheless be barred by the New Jersey Board of Medical Examiners from using the designation "M.D." *Eatough v. Albano,* 673 *F.*2d 671, 675 (3 Cir.1982), *cert.* den. —— U.S. ——, 102 *S.Ct.* 2931, 73 *L.Ed.*2d 1331 (1982).

 Tugender has a property right in his license to practice psychology. The Board has not attempted to deprive him of that right but has acted reasonably to regulate his exercise thereof. His reliance on *N.J.S.A.* 45:14B–3 is unfounded. That section of the statute provides that recognition may not be withheld from an "educational institution solely because its program is not accredited by any professional organization of psychologists . . . ." In no sense does this provision justify the conclusion that East Coast University, not accredited by any state or regional public or private agency, must nevertheless be recognized as an accredited institution by this state. His credentials as a Doctor of Philosophy were rejected because his degree was awarded by an institution totally lacking public recognition or sanction, not "solely" because it was unaccredited by any "organization of psychologists."

Tugender inadvertently highlighted the reasons for denying recognition to a degree from an unaccredited institution such as East Coast University. The State of Florida apparently had no board of psychological examiners when he was awarded his Ph.D. "degree." In explaining Florida's rationale when it later created such a board, he testified:

it didn't exist then, but that board finally got formed because there were a lot of fly-by-night schools in Florida. There was a real diploma medical haven . . . .

On appeal from an administrative determination, the standard of review is the sufficiency of credible evidence in the record to support it. *In re Heller Suspension, supra,* 73 *N.J.* at 309. That standard has unquestionably been satisfied in this case. Beyond that, in our view, the Board's action is mandated by law and public policy. It could not otherwise have discharged its statutory responsibility. Any other result would drain the degree of Doctor of Philosophy of substance and thus render it meaningless and devoid of value. The public expects and is entitled to enforcement of at least minimal reasonable standards for the use of such a title, which represents a level of education and accomplishment significantly above average, implicit in the designation itself.

Affirmed.