Matter of H.Q. (2025 NY Slip Op 25256)

[*1]

Matter of H.Q.

2025 NY Slip Op 25256

Decided on November 26, 2025

Civil Court Of The City Of New York, New York County

Zellan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on November 26, 2025
Civil Court of the City of New York, New York County

In the Matter of the Application of H.Q., Petitioner, 
 for Leave to Change Their Name to Dr B. B. F. and for Leave to Change Their Sex Designation to Female

Index No. NC-002277-25/NY

Weil, Gotshal & Manges LLP (Aimee Adler and Mary Ryan, of counsel) and Legal Services NYC of New York, NY, for petitioner

Jeffrey S. Zellan, J.

Recitation, as required by CPLR 2219(a), of the papers considered in the review of this motion:
Paper Numbered
Order to show Cause/ Notice of Motion and
Affidavits /Affirmations annexed 1
Answering Affidavits/ Affirmations
Reply Affidavits/ Affirmations
Memoranda of Law
Other — Supplemental Papers 2
Upon the foregoing cited papers, the Decision/Order on the petition is as follows:
Petitioner seeks an order granting them leave to assume the name "Dr B. B. F.," change her sex designation from male to female, and seal the record. After having adjourned this proceeding for additional briefing by order dated September 11, 2025, the Court grants the petition, except for the request to change her name to include the name "Dr" to precede the rest [*2]of the requested name for the reasons set forth below.[FN1]

Background
Petitioner is a 42-year old resident of New York County, born in Kandahar of what is now the Islamic Emirate of Afghanistan. (Petition, ¶¶ 3-4). She "wants to change her name to be consistent with her identity and appearance," and "to change the sex designation on her government identification from male to female." (Petition, ¶¶ 12 and 14). Specifically, petitioner states that she "wants to change my name . . . in my personal life as it better reflects my gender and who I am." (Petitioner's Aff., ¶ 2). The Court, and the law of this State, fully supports petitioner's stated goal, and, accordingly, the Court grants almost all of the relief sought by petitioner. However, the request to include as a first name the name "Dr" to precede the rest of the requested name must be denied 
Discussion
New York recognizes that "to ensure alignment with self-defined identity and protect from arbitrary or unlawful interference with one's privacy, individuals are entitled to have a name change, image rectification, and correction of sex or gender appear[ance] in public records and identity documents." Matter of J.D.A.L., 2025 NY Slip Op 25172, *2 (Civ. Ct., New York Co. Jul. 28, 2025), quoting, Nicolas Carillo-Santarelli, International Decision: Advisory Opinion OC-24/17 Series A, No.24., 112 A.J.I.L. 479 (2018) (discussing Inter-American Court of Human Rights decision regarding human rights obligations to recognize gender identity). "Under New York law, a name change may be accomplished in two ways," either by operation of common law or by court order. Matter of D.C.S., 68 Misc 3d 663, 666 (Sup. Ct., St. Lawrence Co. 2020) (collecting cases). While the common law method has the ease of being "accomplished by usage or habit," that has fallen out of favor as "[t]he Civil Rights Law provides an additional method to accomplish this task whereby a change of name is authorized by judicial proceedings allowing it to be speedy, definite and a matter of record," which has become a more advantageous tool for New Yorkers navigating the modern security state of the 21st Century. In re Halligan, 46 AD2d 170, 171 (4th Dept. 1974); and Matter of D.C.S., at 666, quoting, Matter of Golden, 56 AD3d 1109, 1110 (3d Dept. 2008). See, generally, Real ID Act of 2005, 119 Stat. 302 (reforming security-related requirements for various government identification documents). Here, petitioner seeks the requested name and sex designation changes pursuant to the statutory framework set forth in the Civil Rights Law §§ 60-65, and 67, including the Gender Recognition Act, codified in relevant part as Article 6-a of the Civil Rights Law. 
[*3]Petitioner May Change Her Sex Designation
Pursuant to Civil Rights Law § 67(2) "[w]hen an individual petitions the court to recognize their gender identity or to amend the sex designation on an identity document, the court shall issue such an order upon receipt of an affidavit from such individual attesting to their gender identity or reason for the change." Petitioner's verified petition, in which she seeks relief "consistent with her identity and appearance," and specifically seeking leave "to change the sex designation on her government identification from male to female," would be sufficient.[FN2]
(Petition, ¶¶ 12 and 14). Although petitioner did not include a copy of a birth certificate from Afghanistan as part of her supporting papers, petitioner alleges that is because she "was not born in a hospital and her parents did not obtain a birth certificate for her," as "[d]ue to the political climate in the region at the time, it was not uncommon for birth to go unrecorded," and "it is not possible to obtain a birth certificate now" due to the present state of affairs in her country of birth. (Petition, ¶ 18). Petitioner did include copies of her certificate of naturalization and American passport however, which are sufficient proof of identity particularly given the complex diplomatic relationship between the United States and the present Afghan government. See, Matter of E.A.C.S., 84 Misc 3d 332, 333-334 (Civ. Ct., New York Co. 2024). As a consequence, and as the Court found in Matter of J.D.A.L., petitioner is entitled to a "correction of sex or gender appear[ance] in public records and identity documents." Matter of J.D.A.L., supra. 
The Court notes that given recent changes in the law outside New York, petitioner is expressly not seeking an order of the Court directing government officers or agencies outside New York to amend government records consistent with this decision, such as petitioner's passport. Trump v. Orr, 2025 U.S. LEXIS 4020, *1-2 (U.S. Nov. 6, 2025) (staying injunction requiring amendment of gender identity on passports); See also, Matter of "Mary", 75 Misc 3d 643, 644-645 (Sup. Ct., Clinton Co. 2022) (denying petition to amend Vermont birth certificate to reflect petitioner's gender identity). As such, the "pointless but painful perversion of . . . equitable discretion" in Trump is inapplicable to the relief sought here.[FN3]
 Trump, at *4 (Jackson, J., dissenting); see also, Matter of N.K., 76 Misc 3d 641, 642 (Civ. Ct., Bronx Co. 2022) (distinguishing Matter of "Mary," and granting leave to seek change of Georgia-issued [*4]documents). Accordingly, the Court grants that branch of the petition seeking an order changing petitioner's sex designation from male to female.
Petitioner's Proposed New Name is Not Permitted in New York
In addition to changing her sex designation, petitioner also seeks leave to assume the name Dr B. (as her first name) B. (as her middle name) F. (as her last name) in place of her present legal name, H. Q. (Petition, ¶ 2). After review of the petition, supporting papers, and applicable law, the application is denied for the reasons set forth below.
Petitioner asserts that her chosen name is "the way I would like to be addressed by others in my person life," and that she has "taken steps to ensure organizations and members of my community refer to me as my preferred name 'Dr B..'" (Petitioner's Supp. Aff., ¶ 4). 
Under Civil Rights Law § 63, a court shall grant a name change petition if "the petition is true," "there is no reasonable objection to the change," and the application is not made "to avoid or defraud creditors or for any other fraudulent or illegal purpose." The statute is construed liberally, and New York courts generally approve adult name changes. However, as the Court has previously noted, "[w]hile a court's authority to review an application for a name change is limited, the Court is not a mere rubber stamp and . . . once an individual submits him or herself in seeking the Court's permission for a name change, the individual is subject to the court's discretion in granting said request." Matter of E.A.C.S., at 333. In this regard, the Court retains discretion to deny a change where the proposed name may reasonably lead to fraud, deception, or confusion.
The possibility of fraud, deception, or confusion requires both a subjective and objective review. See, Matter of Gutkaiss, 11 Misc 3d 211, 212-213 (Sup. Ct., Columbia Co. 2005) (denying name change "to protect the rights and interests of the public" even in the absence of subjective intent). Evidence of a subjective desire by petitioner to deceive or defraud would be cause to deny leave for any proposed name. Here, petitioner states that "[m]y use of 'Dr' in my legal name is not intended to confuse or deceive anyone by indicating that I have earned a degree or hold a professional title," that "I have not and do not intend to hold myself out as someone who is qualified to provide services normally associated with someone who uses 'Dr' to indicate an earned doctorate degree," and that her proposed name is instead "a personal expression of how I wish to be referred by others." (Petitioner's Supp. Aff., ¶ 6). The Court accepts petitioner's assertion of good will (which the Court presumes of all litigants and counsel unless and until shown otherwise) to be genuine and finds that sufficiently ends the matter subjectively. However, petitioner's apparent well-meaning intent does not end the inquiry. 
A proposed name may be denied when it would mislead the public or cause confusion, even where the petitioner's intentions are not fraudulent. Titles such as 'Dr' are universally recognized as professional designations, not personal names. Changing petitioner's first name to 'Dr' would, as a matter of law and common understanding, create the false impression that petitioner holds a doctoral degree, is licensed as a physician or medical professional, or is otherwise a member of a regulated profession. Allowing petitioner to legally assume such a name would risk misleading employers, causing confusion in government records, undermining the integrity of professional licensing systems, and enabling potential misuse in health-related or commercial settings.
The Third Department held long ago that "[w]e know of no inherent right of any person to call himself "doctor," as "[o]ne who does so without having properly received an appropriate degree from an educational institution authorized to confer a doctorate is to that extent creating a [*5]deception." Buhl v. Univ. of the State of New York, 268 A.D. 530, 533 (3d Dept. 1944) (finding that the Board of Regents was permitted to restrict use of the title 'doctor'). See also, People v. Bartone, 12 Misc 2d 926 (Westchester Co. Ct. 1958 (discussing criminal prosecution for unauthorized use of 'doctor' and 'Dr.'); Ethics Op. No. 564: Use of Title "Doctor" by Holder of J.D. Degree (New York Co. Lawyers Assn. Jul. 23, 1968) (finding use of title 'doctor' by attorney to be deceptive); and N.Y.S. Educ. Dept., Practice Guidelines: Using the Title "doctor," https://www.op.nysed.gov/professions/speech-language-pathology/professional-practice/using-the-title (last accessed Nov. 24, 2025) (advising that "[l]icensees in the health professions may not use the title 'doctor' when offering to perform professional services without indicating the profession in which the licensee holds the doctorate").[FN4]
Other jurisdictions have found similarly as well. See, e.g., Palmer v. Bonta, 2025 U.S. Dist. LEXIS 184724, *40-41 (C.D. Cal. Sept. 19, 2025) (noting that "generally the use of 'Dr.' by individuals with a doctorate is ubiquitous," but that the assumption the public could be misled "is hardly a speculative one," and unqualified "use of 'Dr.' or 'doctor' is inherently misleading"); Wisconsin v. Michaels, 277 N.W. 157, 158 (Wis. 1938) (noting that use of title 'doctor' had been regulated in Wisconsin since 1881 to avoid deception); In re Tugender, 451 A.2d 1328 (N.J. App. Div. 1982) (state regulation of title 'doctor,' or 'Dr.' was constitutional). Further, courts routinely deny similar requests where the proposed name suggests public authority, professional licensure, or official capacity. See, e.g., Matter of Thompson, 82 Misc 3d 1243(A) (Civ. Ct., New York Co. 2024).
Petitioner's argument that "[s]ome individuals go by 'Dr' but do not hold degrees that confer that title upon them (for example, Dr. Dre)," and that she "wishes to use 'Dr' in a similar way, as a form of personal expression of how she wishes to be referred by others," is not without some merit, but is also distinguishable as a stage name in the performing arts rather than a legally-ordered name. (Petitioner's Supp. Ltr., at 2). Dr. Dre is legally Andre Young. See., e.g., Beats Elecs. v. Lamar, 2015 U.S. Dist. LEXIS 116487 (C.D. Cal. 2015). The historical purpose of a stage name — "an alias an actor uses to represent their public-facing professional identity as a performer" — is materially different than a judicially-mandated legal name for all public and private purposes. Mae Ross, How to Come Up with a Stage Name, Backstage (June 28, 2023) (emphasis added).[FN5]
In the circumstances presented, the objective risk of public confusion precludes the name change sought.
Petitioner Has Established Good Cause to Seal the Record
As part of her application, petitioner seeks an order sealing the record of this proceeding. (Petition, ¶ 13). Specifically, petitioner alleges that "the records contain personal information that could jeopardize her personal safety," that "[h]aving the records sealed would offer [*6]Petitioner additional peace of mind," and relies on the Supreme Court, Westchester County's holding in Matter of E.P.L. — 26 Misc 3d 336 (Sup. Ct., Westchester Co. 2009) — waiving publication requirements in a name change proceeding based upon "numerous documented instances of those targeted for violence based on their sexual orientation or gender identity," and that petitioner "has a right to feel threatened," in the event their transgender status is made public. (Petition, ¶ 13). The Court already granted that branch of the petition as part of its September 11th interim order, and grants this request in its final order here. See, Richardson; and In re New York Mayor's Office of Special Enforcement, supra.
As a general rule in New York, court records and proceedings are public, and "a court shall not enter an order in any action or proceeding sealing the court records, whether in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof," and that specifically considers "the interests of the public as well as of the parties." 22 N.Y.C.R.R. § 216.1(a). The Court of Appeals has flatly held that such analysis must be case specific and that the interests of litigants and the public are "competing and compelling," in light of "our State's long-standing, sound public policy that all judicial proceedings, both civil and criminal, are presumptively open to the public" Matter of James Q, 32 NY3d 671, 676 and 680 (2019). 
For name change proceedings, "the court shall, at the request of the applicant or sua sponte, order the records of such change of name proceeding be sealed, to be opened only by order of the court for good cause shown or at the request of the applicant," if the Court finds that an "open record of an applicant's change of name would jeopardize such applicant's personal safety, based on totality of the circumstances," which the Legislature defined as including, but not limited to, "a consideration of the risk of violence or discrimination against the applicant, including such applicant's status as transgender or as the subject of domestic violence." Civil Rights Law § 64-a(1). Moreover, "[t]he court shall not deny such sealing request solely on the basis that the applicant lacks specific instances of or a personal history of threat to personal safety." Civil Rights Law § 64-a(1). 
As to the sealing of records in the context of sex designation applications specifically, the Civil rights Law provides that "[u]pon request of the applicant or sua sponte, the court shall order the records of such change of sex designation proceeding to be sealed, to be opened only by order of the court for good cause shown or at the request of the applicant." Civil Rights Law § 67-b; see also, Matter of Cody VV. (Brandi VV.), 226 AD3d 24, 27 (3d Dept. 2024)("Notwithstanding the different sealing standards articulated within the subject articles, both Civil Rights Law article 6 and Civil Rights Law article 6-a, expressly recognize an applicant's transgender status as a ground for sealing the records."); Adv. Op. OC-24/17, slip op., ¶ 135 (Inter-Am. Ct. of H.R. 2017) (holding that "undesired publicity concerning a change in gender identity, already effected or pending, may make the applicant more vulnerable to diverse acts of discrimination against his or her person, honor or reputation and, ultimately, may represent a major obstacle to the exercise of other human rights," and "[i]n this regard, both the procedure, and the amendments made in the records and on the identity documents in conformity with the self-perceived gender identity, should not be accessible to the public, and should not [*7]appear on the identity document itself."). [FN6]
As a consequence, this Court, and others, have appropriately not been shy in sealing such proceedings. See, e.g., Matter of J.D.A.L., at *1 n. 1 (granting separate sealing order); and In the Matter of JW, at *2-5 (sealing record sua sponte).[FN7]

Conclusion
Although the Court cannot grant all of the relief petitioner seeks at this time, it does grant very nearly all of it in accordance with the common will, and grants petitioner leave to seek further relief which can be granted to address petitioner's concerns.
Accordingly, it is
ORDERED that the petition is granted in part and denied in part; and it is further
ORDERED that the branch of the petition seeking leave to change petitioner's sex designation to female is granted; and it is further
ORDERED that the branch of the petition seeking leave to change petitioner's name to Dr. B. B. F. is denied without prejudice to submitting an amended request seeking a different proposed name than that presently sought in this proceeding; and it is further
ORDERED that the branch of the petition seeking an order sealing the record of this proceeding is granted upon the Court's finding that an open record of the name change would jeopardize personal safety based upon the totality of the circumstances presented; and it is further
ORDERED that the clerk of the Court seal the record of this proceeding at petitioner's request and may be opened only by court order for good cause shown or at the request of petitioner.
This constitutes the Decision and Order of the Court.
Date: November 26, 2025
Hon. Jeffrey S. Zellan, J.C.C.

Footnotes

Footnote 1:The Court is appreciative of pro bono counsel in this proceeding, whose presence and supplemental briefing in response to the Court's interim order was particularly helpful in assisting the Court in ensuring petitioner was fully heard in the course of this proceeding, and in facilitating the Court's role "to maintain the integrity of the corpus of the common law . . . so that the community understands it and so that it may be legitimately integrated into the tradition." Richardson v. United States, 477 F. Supp. 2d 392, 405 n. 18 (D. Mass 2007) (cleaned up) (collecting authorities and discussing the importance of courts issuing written opinions on matters of interest). See also, e.g., In re New York Mayor's Office of Special Enforcement, 2020 NY Misc. LEXIS 829, *1 (Sup. Ct., New York Co. Feb. 26, 2020) (citing Richardson in issuing written findings as part of non-disclosure and sealing order).

Footnote 2:Although "[n]o additional medical evidence shall be required to grant such request," and the Court did not solicit such evidence for that very reason, petitioner elected to submit reports from healthcare providers indicating that she has been diagnosed with gender incongruence and dysphoria. (Petitioner's Supp. Aff., Attachments B and C). Though expressly not required by statute, the Court may (and does) consider them in light of petitioner's knowing, intelligent, and voluntary choice (made with the assistance of counsel) to offer those reports are evidence and finds that they strongly support granting relief.

Footnote 3:That said, to the extent an order granting petitioner's sex designation change in New York causes disagreement or difficulty for sister states, the federal government, or the present Afghan government, the unequivocal common will of New York on the matter can be summed up in Rhett Butler's final words to Scarlett O'Hara in Gone with the Wind, noted as "the single greatest quote in the history of American film." Zoe v. Zoe, 2014 N.J. Super. Unpub. LEXIS 3078, 27 (Super. Ct., Ocean Co. 2014) (citation omitted).

Footnote 4:As a permissible example, the State Education Department has indicated that a licensee holding an "earned doctorate," (which is defined as "s a doctoral degree conferred by a recognized college or university authorized to confer doctoral degrees in the state (or, for foreign schools, in the country) in which it is located) such as a "Ph.D. in Music who holds a license in speech-language pathology to use the title, 'doctor,'" but that "he or she must indicate that his or her doctorate is in music." Practice Guidelines: Using the Title "doctor," supra.

Footnote 5:Available at ttps://www.backstage.com/magazine/article/reasons-stage-name-might-right-75295/#section0 (last accessed Nov. 24, 2025).

Footnote 6:The Court noted the basis of its concern in detail, discussing the transgender community's particular "vulnerability to hate crimes, or transphobic and psychological violence . . . by a desire to punish individuals whose appearance or behavior appears to challenge gender stereotypes," including "torture and ill-treatment in health centers or detention centers, sexual violence, denial of the right of access to health care, discrimination, exclusion and bullying in educational contexts, discrimination in access to employment or in the professional sphere, and access to housing and social security" Adv. Op. OC-24/17, at ¶ 134.

Footnote 7:To the extent the First Department's holding in Gryphon Dom. VI, LLC is in tension with the Third Department's holding in Matter of Cody VV., the Court is bound by Gryphon Dom. VI, LLC to conduct an individualized examination of any proceeding seeing a sealing order in light of the constitutional ramifications the First Department identified. That said, the Court finds that the individualized consideration favored by Gryphon Dom. VI, LLC, when applied to the facts petitioner offers, supports sealing here.