[No. 20651. Department One. August 23, 1927.]

THE STATE OF WASHINGTON, *Respondent*, v. EDWARD DEVLIN, *Appellant*.[1]

[1] CRIMINAL LAW (115, 116, 229)—EVIDENCE—CHARACTER OF ACCUSED—SCOPE OF EVIDENCE IN REBUTTAL. In a prosecution for murder and robbery, in which the accused did not testify, it is prejudicial error, depriving the accused of a fair trial, for the court, after the only witness identifying the accused had stated on cross-examination that he had picked the accused out of a row, had seen him in jail, and had seen his picture, to allow the state, on redirect examination, to show by the witness that he had seen the accused's picture in the "rogue's gallery" and to explain what he meant by the "rogue's gallery."

Appeal from a judgment of the superior court for King county, Hall, J., entered October 21, 1926, upon a trial and conviction of robbery and murder. Reversed.

[1]Reported in 258 Pac. 826.

*Beardslee & Bassett* and *M. H. Cooperman,* for appellant.

*Ewing D. Colvin,* for respondent.

MITCHELL, J.—A robbery was committed by a gang of bandits on a street in the heart of the business district in Seattle, about ten o'clock in the forenoon on April 1, 1926. In the act of the robbery, one person was killed. Edward Devlin, upon a separate trial, was convicted of both crimes and has appealed from a judgment and sentence on the verdict.

The appellant did not testify at the trial. There was abundant proof of the robbery and murder. The appellant was apprehended and lodged in jail within a few hours. No witness at the trial, other than the state's witness H. C. Hoover, made any pretense or claim of identifying the appellant as having been present at the scene of the crimes. The witness Hoover testified in chief that, at the hold-up, he attempted to rescue the bag of money as one of the bandits was in the act of taking it from the messenger carrying it, when the appellant, identified by the witness at the trial, stuck an automatic short muzzled gun against the body of the witness and ordered him to "let go."

[1] On cross-examination on behalf of the appellant, the witness testified that the appellant was a stranger to him, and, while being still further questioned with reference to his identification of the appellant, volunteered the statement that he had seen him in jail, and then testified:

"Q. You saw him in the jail? A. Once. Q. You were taken down for that purpose? A. Yes, sir. Q. How many others were taken down? A. Three or four, I guess. Q. Was he brought out and showed to you? A. Yes, sir. Q. Had you previously seen a picture of him? A. No, sir, not before I went up there.

Q. Before you went to the jail. Before you saw him?
A. No. sir. Q. You were shown a picture after you
saw him in the jail? A. No, before. I seen him in the
jail. I picked him out of a row—out of a bunch.''

On redirect examination of the witness on behalf of
the state, the following occurred:

''Q. Counsel asked you if you ever saw a picture of
this defendant Devlin before you identified him in the
city jail. Where did you see such a picture? Mr.
Vandeveer: Objected to as not proper redirect exami-
nation. The Court: He may answer the question. Mr.
Vandeveer: Your Honor, of course, knows what the
answer will be. The Court: What did you say? Mr.
Vandeveer: I say, I assume you can imagine what the
answer will be. The Court: You inquired about the
picture. Mr. Vandeveer: I merely asked him if he had
seen a picture. He said that he had. The Court: He
may answer. A. I saw it in the rogue's gallery. Mr.
Vandeveer: I move to strike the answer as prejudicial.
Q. What do you mean by the rogue's gallery? Mr.
Vandeveer: Wait until we get a ruling from the court.
The Court: Motion denied. Q. What do you mean by
the rogue's gallery? Mr. Vandeveer: Objected to as
highly improper and prejudicial. The Court: Objec-
tion overruled. Mr. Vandeveer: Exception. A. I
went down there and they took me in the police station
in the detective department and showed—Mr. Van-
deveer: Objected to as not responsive. The Court:
The question is, what do you mean by the rogue's gal-
lery? A. A bunch of pictures in a book down there at
the station. Mr. Vandeveer: I move that the answer
be stricken as not redirect examination, and not proper
and prejudicial. The Court: Motion denied. Mr.
Vandeveer: Exception.''

These questions and answers in the redirect exami-
nation of the witness, which were allowed over appel-
lant's objections and motions to strike, constitute the
first assignment of error.

The contention of the appellant is that the preju-
dicial effect of the testimony deprived him of a fair

trial. Hoover's identification of the appellant was a matter of great importance in the trial. He had never seen the appellant, except a few minutes during the excitement at the scene of the crimes. He was taken to the city jail to identify him, as the witness voluntarily stated in testifying. Then, as bearing upon the value of this testimony of identification, he was asked whether he had seen a picture of the man before or after he undertook to identify him at the jail. The final answer was that he saw the picture first, and because he added "I picked him out of a row—out of a bunch," there was furnished what counsel for the state claims to be justification for the redirect examination complained of. It is argued that it was difficult to tell whether the witness meant that he picked the appellant's picture out of a row or bunch of pictures, or whether he picked the defendant out of a row or bunch of men, and that, to dispel the ambiguity, it was not only proper but necessary to have the witness explain.

Had that been the purpose, a question to that effect could and should have been asked. He could have been asked to explain whether he meant that he picked the picture out of a row or bunch of pictures or that he picked the defendant out of a row or bunch of men. Instead, however, the question was: "*Where* did you see such a picture?" A perfectly harmless question upon its face, but fraught with danger as a possible, if not probable, preliminary to highly prejudicial matter within the knowledge of those conversant with the real facts, not including the jury, of course. Appellant's protests against that lurking danger being denied, the answer of the witness was, "I saw it in the rogue's gallery."

Was this the information needed by the state to clear up the supposed ambiguity as to whether the witness

had picked the picture out of a row or bunch of pictures or picked the defendant out of a row or bunch of men? To be sure, it was not, but on the contrary, it was a prejudicial departure from that view or purpose. Was the answer a surprise or did it create any disapproval on the part of the state's attorney? At least, the record does not show that he joined in or confessed appellant's motion to strike the answer. Upon denial of the motion to strike the answer, the state, not yet content but pressing on still further over the line, asked the witness, ''What do you mean by the rogue's gallery?'' Had that anything to do with the supposed uncertainty in the witness's testimony as to whether the picture had been picked out of a row or bunch of pictures or the accused out of a row or bunch of men? And, over objection, that question was answered; and again the state failed to join in or confess appellant's motion to strike the answer as prejudicial.

The questions may be asked, first, what had such evidence to do with the question of the guilt or innocence of the defendant of the crimes for which he was being tried, and second, shall the state be permitted to attack the defendant's character, when he himself does not put it in issue?

In *State v. Thornton,* 137 Wash. 495, 243 Pac. 12, the defendant was convicted of violating the prohibition law. In the opinion in that case this court said:

''Over the objection of counsel for appellant, one of the officers was permitted to testify upon the trial, in substance, that appellant had, on previous occasions, associated with one Rosen and one Renault, both of whom, as the officer testified, had been violators of the prohibition law and had been convicted therefor. This testimony, so placed before the jury, was manifestly erroneous and prejudicial to appellant's rights in the highest degree. It could have no possible bearing upon the question of appellant's guilt, other than tending to

show that he had a bad reputation and was associating with people of bad reputation, as touching his and their possible violation of the prohibition law.''

In *State v. Eder,* 36 Wash. 482, 78 Pac. 1023, the defendant did not testify at his trial. His wife was a witness for him and on cross-examination, over his objection, she was required to answer that the defendant had been imprisoned for another crime. Upon reversing the judgment it was said:

''Moreover, it is not the policy of the law to convict a man of one crime by showing that he has, at some time, been guilty of another. As testimony of the kind mentioned establishes the bad character of the defendant, its inevitable effect is to prejudice the minds of the jury against him, causing them to find him guilty of the crime charged on doubtful evidence, or evidence that would not otherwise produce a conviction. It violates, also, another well settled rule of criminal jurisprudence, namely, it permits the state to attack the character of the defendant when he does not himself put his character in issue.''

In *State v. Ferrone,* 96 Conn. 160, 113 Atl. 452, the supreme court, in speaking upon this subject, said:

''Therefore our law sedulously guards against the introduction of evidence of any matter immaterial or irrelevant to the single issue to be determined. The purpose of these salutary laws might often be defeated if the minds of the jurors were subjected to the influence of facts or considerations having no legitimate bearing on the only question they have to decide, and their verdict be reached under the impulse of passion, sympathy, or resentment. Such a verdict is illegal and will be set aside. *Worden v. Fore-Meenan Co.,* 83 Conn. 642, 652, 78 Atl. 422; *People v. Sharp,* 107 N. Y. 427, 14 N. E. 319, 1 Am. St. Rep. 851; *People v. Molineux,* 163 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193. The rule everywhere enforced excludes not only evidence of another crime, but also evidence tending to degrade the accused, to prejudice the jury against him, to

divert their minds from the real issue which they have to determine, or to persuade them by matters which they have no legal right to consider that the accused, for reasons other than those based upon legitimate evidence, was more likely to have committed the particular crime for which he is on trial.''

Upon a second appeal of the *Ferrone* case, reported in 96 Conn. 160, 116 Atl. 336, it was stated that one Higgins, a detective sergeant, had testified on behalf of the state, over objections of the defendant, to a conversation with the accused at the time of his arrest, as follows:

''I said, 'I am going to take you to headquarters and verify the fact the picture of yours is there and you are wanted.' He said, 'No, I was never arrested in my life before.' I said, 'I'll have to take you over anyway.' . . . While waiting for a car, Moog, a fellow officer of Higgins, said to Ferrone: 'Why you just came out from doing seven years in Sing Sing.' ''

The court said:

''Evidence tending to show the commission of other crimes on the part of the accused, or facts disclosing his bad character or repute, are not material or relevant to the charge against the accused and should never be permitted to be introduced, for its purpose can be none other than to prejudice the jury against the accused, and hence to deny him the fair trial which the law guarantees him of being proven guilty of the crime with which he stands charged by evidence which our law accepts. None of the conversation between Higgins and the accused was admissible. None of it related to the charge against the accused. It was obviously intended for the purpose of picturing the accused as a notorious criminal.''

In *People v. Brown*, 110 App. Div. 490, 96 N. Y. Supp. 957, the defendant was convicted of arson. In the trial, he did not testify. A witness against him testified that the accused admitted to him that he had

had fires at three places, other than the one for which he was on trial. Upon reversing the case, the court said:

"We cannot say that the jury did not conclude that the defendant was guilty of this fire by reason, among other considerations, of the fact that he had had so many fires in his buildings before. It is said that this evidence was given in the Jones case, and yet there was an affirmance in that case by this Court and the Court of Appeals. In that case the evidence came into the case by way of the cross-examination of this defendant, who was a witness there. In this case the defendant was not a witness, and this evidence was not given to affect his credibility as a witness, but as direct evidence of defendant's guilt."

These are but a few of the great many cases to the same effect from this and other states. We have examined the cases of *State v. Whitfield,* 129 Wash. 134, 224 Pac. 559; *State v. Howard,* 137 Wash. 172; 242 Pac. 21; *State v. Melvern,* 32 Wash. 7, 72 Pac. 489; *State v. Kreiss,* 133 Wash. 256, 233 Pac. 649; *State v. Rigsby,* 143 Wash. 31, 254 Pac. 244, and *Manley v. State,* 69 Tex. Cr. 502, 153 S. W. 1138, cited by the respondent, and do not find them to be inconsistent with the authorities we have cited, nor are they, in our opinion, authority in support of the testimony objected to, whether it was elicited for the purpose assigned by the respondent or any other purpose.

The question involved is that of a fair and impartial trial. In *State v. Pryor,* 67 Wash. 216, 121 Pac. 56, this court said:

"A fair trial consists not alone in an observation of the naked forms of law, but in a recognition and a just application of its principles."

It is the law of the land, a right vouchsafed by the direct written law of the people of the state. It partakes of the character of fair play which pervades all

the activities of the American people, whether in their sports, business, society, religion or the law. In the maintenance of government to the extent it is committed to the courts and lawyers in the administration of the criminal law, it is just as essential that one accused of crime shall have a fair trial as it is that he be tried at all, whether he be guilty or not, has his picture in the rogue's gallery or not. In the *Pryor* case just referred to, it was said that it must be remembered, as stated in *Hurd v. People,* 25 Mich. 404, "that unfair means may happen to result in doing justice to the prisoner in the particular case, yet, justice so attained is unjust and dangerous to the whole community."

In our opinion, the redirect examination complained of was improper, and we have no doubt of its prejudicial effect. The matter was wholly disconnected from, and foreign to, the issues to be decided. It was too well calculated to lead the jury into the belief that they were dealing with a criminal already so notorious as to demand the vigilance and services of the police and detectives of the country, and thereby lessen the jury's sense of responsibility or excuse that calm and faithful deliberation which should, at all times, prevail in the trial of one accused of such atrocious crimes.

We are prompted, in our consideration of this case, only on account of the substantial guaranteed rights of the appellant, and are in no way moved by any purpose to condemn the zeal or over-zeal of the very reputable deputy prosecuting attorney who conducted this trial on the part of the state. "But," as stated in *State v. Montgomery,* 56 Wash. 443, 105 Pac. 1035, 134 Am. St. 1119, and repeated in *State v. Pryor, supra,* "the safeguards which the wisdom of ages has thrown around persons accused of crime cannot be disregarded, and such officers are reminded that a fearless,

impartial discharge of public duty, accompanied by a spirit of fairness toward the accused, is the highest commendation they can hope for. Their devotion to duty is not measured, like the prowess of the savage, by the number of their victims.''

In the second assignment of error, it is claimed that an automatic gun taken from the room of the appellant, in his presence, but prior to his arrest, was seized in violation of his constitutional rights and improperly admitted in evidence against him. The appellant, knowing that the gun had been seized, made no application to have it restored to him nor to suppress it as evidence, prior to the trial, as suggested by our cases. *State v. Pielow,* 141 Wash. 302, 251 Pac. 586, and cases therein cited. We leave this matter to be determined by the trial court, if application and motion therefor are made in the orderly way prior to the new trial made necessary for the reasons heretofore given.

Other errors are assigned, some of which, to say the least, are not entirely without merit, but, as they are not of a kind likely to recur upon another trial of the case, we deem it unnecessary to review them.

Reversed, and remanded with directions to the superior court to set aside the verdict and judgment and grant a new trial.

Mackintosh, C. J., French, Fullerton, and Main, JJ., concur.