**George L. SMITH, Appellant,**

v.

**B. J. RHAY, Warden of the Washington State Penitentiary, Appellee.**

**No. 22982.**

United States Court of Appeals Ninth Circuit.

Dec. 2, 1969.

Rehearing Denied Jan. 1, 1970.

Koelsch, Circuit Judge, dissented.

William L. Bennett (argued), Joseph M. Cooney, Spokane, Wash., for appellant.

Paul J. Murphy (argued), Asst. Atty. Gen., John J. O'Connell, Slade Gorton, Atty. Gen., State of Washington, Olympia, Wash., for appellee.

Before HAMLIN, KOELSCH, and ELY, Circuit Judges.

ELY, Circuit Judge:

The courts of the State of Washington have sentenced appellant, George Smith, to life imprisonment as a result of his taking several articles of clothing from a store in which his wife worked. Because of his conviction for the crime of second degree burglary, he received the life sentence under Washington's "habitual criminal" statute. Wash.Rev.Code 9.92.-090.

Smith's conviction for second degree burglary was affirmed by the Supreme Court of Washington in State v. Smith, 72 Wash.2d 479, 434 P.2d 5 (1967). Having exhausted his state remedies as required by 28 U.S.C. § 2254, Smith petitioned in the District Court for a writ of habeas corpus. He alleged as violative of his constitutional rights that (1) evidence used to convict him was illegally seized, (2) purported oral confessions were admitted as evidence despite improper warnings as to his rights and despite the lack of a knowing and intelligent waiver as to those rights, and (3) the jury was unduly prejudiced by acquiring knowledge concerning Smith's previous criminality from the testimony of the relationship between Smith and his parole officer who was a material state witness as to the alleged illegal search. The District Court denied the writ without a hearing.

On Smith's appeal to this court, we have examined the full record of the state proceedings and have concluded that the state courts drew from the undisputed facts certain conclusionary inferences that are not supported by the record and that the record also reveals serious errors of law concerning Smith's constitutional rights.

In early September of 1966, various articles of clothing were discovered missing from the store in which Smith's wife was employed. Since no signs of break-

ing and entering were apparent, the sheriff suspected that the burglar might have used a key. Such a key, the sheriff also suspected, might have been available to Smith (although the key was never found and Smith later denied having had or used it). The sheriff, having ground for suspicion but not having obtained a search warrant and not purporting to have grounds for arrest, pursued his investigation by enlisting the aid and concerted action of Smith's parole officer to investigate the suspect. The testimony of the parole officer reveals, as to the plan of the sheriff to engage the parole officer's assistance, the following:

"Q. When did you first hear of this burglary?

"A. I arrived here on the 8th of September. The sheriff advised me that there had been a burglary and that the wife of Mr. Smith worked for Mr. Price where the burglary had occurred and that she had lost her key. Therefore, he was interested in finding the key.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. And did the sheriff mention anything else to you in connection with the defendant in this case?

"A. That he wished to talk to this man."

Following the conversation between the parole officer and the sheriff, the deputy sheriff went with the parole officer to find Smith. In the testimony of the deputy sheriff, on the prosecution's direct examination, there appears:

"Q. Now, the testimony has so far —and I hope I can take a few shortcuts here—You and Jim Northrup, the probation officer, had apparently left around 8:00 o'clock on the evening from the sheriff's office?

"A. Perhaps a little later.

"Q. You were going to eat and look for George Smith?

&ast; &ast; &ast; &ast; &ast; &ast;

"A. We had planned to go and eat and both of us were looking for Mr. Smith."

After the officers located Smith at a restaurant, the group then went to Smith's hotel room. Smith, the parole officer, and the deputy sheriff entered the room where, in plain sight, the officers saw a major portion of the missing items of clothing. The deputy sheriff then left the room and called the sheriff who came to meet the group at a stairway outside of Smith's room. During the conversation, the parole officer informed Smith of his "rights":

"A. I told Mr. Smith the sheriff by law would have to have a search warrant before he could enter his room and that I, as a parole officer, did not need a search warrant due to the fact —as Mr. Smith well knows—a man on parole is doing cell time on the outside, and we as parole officers are considered in the same status as guards, and therefore we have the right to search a cell or arrest him at any time without a warrant."

Shortly thereafter, Smith permitted all those present, including on this occasion the sheriff, to return to his room. The goods were subsequently seized, and Smith was arrested after he was interrogated.

We have assumed for the purposes of this opinion that a parole officer, in the performance of his duties as such, may permissibly enter a parolee's living quarters at any time and without the need for a search warrant. *See generally* Damiani, Probation and Parole Under Recent Decisions, 8 Trial Judges' J. 55 (1969). We also assume that the parole officer could report any incriminating evidence discovered by such an entry to the proper law enforcement officials and that such evidence might be properly introduced in a subsequent criminal proceeding based upon it. We think it obvious, however, that a parole officer may *not* conduct a warrantless search of items in the parolee's possession while acting on the prior request of law enforcement officials and in concert with them. The parole officer is in such a case acting, not as the supervising

guardian, so to speak, of the parolee, but as the agent of the very authority upon whom the requirement for a search warrant is constitutionally imposed. To permit concerted effort among officials in an attempt, such as is manifest here, to circumvent Smith's fourth amendment rights cannot be done. *Compare* Corngold v. United States, 367 F.2d 1, 4–5 (9th Cir. 1966) (*en banc*).

 It is urged that Smith voluntarily "consented" to the search and seizure. Smith did no more than to submit to the apparent authority of the parole officer to enter his room at any time and to accept a mistaken representation as to the extent of that authority. *See* Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1947); Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921). Once the parole officer and the deputy sheriff had already seen the missing clothes, Smith's insistence that the sheriff obtain for himself a search warrant would have been a fruitless gesture. Accordingly, the unconstitutionally seized clothing should not have been admitted as evidence.

 As to the introduction at trial of Smith's alleged oral confessions, the record does not clearly disclose that he was warned of his rights with the specificity required in Miranda v. Arizona, 384 U.S. 436, 478–479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Although Smith was told that he had the right to an attorney, he was not, insofar as the record of the hearing before the trial judge concerning the admissibility of the confessions indicates,[1] told, as required by *Miranda*, that he had the right to the presence of an attorney and that, if he could not afford one, a lawyer could be appointed to represent him *prior to any questioning*.

Smith could not have made a knowing and intelligent waiver of his rights until *after* the required warnings had been given. In *Miranda* we read:

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Escobedo v. Illinois, 378 U.S. 478, 490 [84 S.Ct. 1758, 1764, 12 L.Ed.2d 977], n. 14. This Court has always set high standards of proof for the waiver of constitutional rights * * *."

*Id.* at 475, 86 S.Ct. at 1628 (citations omitted). In the state of the record, confused and conflicting, we hold that the prosecution did not meet the heavy burden which rested upon it. Furthermore, it would be particularly difficult to hold that Smith "knowingly and intelligently" waived his rights in the context of this case, since the questioning immediately and directly followed an illegal seizure of the highly incriminating evidence. Without a lawyer, and especially in view of the parole officer's explanation of Smith's "rights," it is unlikely that Smith, a layman, could have perceived any benefit by his remaining silent in the face of the open presence of the clothing on the expectation that the seized clothing would eventually be excluded from evidence. *Compare* Fahy v. Connecticut, 375 U.S. 85, 90–91, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); Wong Sun v. United States, 371 U.S. 471, 484–488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Takahashi v. United States, 143 F.2d 118, 122 (9th Cir. 1944); People v. Johnson, 75 Cal.Rptr. 401, 405–407, 450 P.2d 865 (Mar. 3, 1969).

Smith's final contention relates to certain testimony of Parole Officer North-

---

1. During the trial before the jury, the sheriff, for the first time used the magic words that the parole officer had told Smith at the stairway that he had a right to have an attorney *present at the time*. In earlier testimony before the judge, the sheriff had testified only that the parole officer told Smith he had the right to an attorney or to have the court appoint one for him. The latter version is corroborated by the parole officer himself.

rup. Although Northrup was called as a witness for the purpose of describing the investigation and arrest, his testimony revealed through necessary inference that he was already acting in the capacity of Smith's parole officer at the time of the offense.[2] The jury obviously must have inferred that Smith had been previously convicted for unknown crimes, an inference that would place Smith's character in issue as part of the prosecution's case against him. Smith contends that this procedure violated his constitutional right to a fair trial.

■ It is a rule of almost universal application that evidence of past crimes cannot be introduced as part of the prosecution's case in chief. The rule is based on both a lack of relevance to the principal case and the highly prejudicial effect that the evidence may have on a jury. Possible exceptions are recognized when the evidence has probative force relevant to the intent or motive, design, knowledge, identity, or habits of the defendant. *See* Reed v. United States, 364 F.2d 630, 633 (9th Cir. 1966), and authorities there cited. In these situations, as in those in which the defendant has placed his character in issue by testifying, the probative force of the evidence is often deemed to outweigh the prejudicial effect. *See, e. g.,* Burg v. United States, 406 F.2d 235 (9th Cir. 1969). In the present case, Smith did not testify nor did he place his character in issue in any other way.

■ Washington itself recognizes the basic purpose for excluding evidence of prior convictions. State v. Eder, 36 Wash. 482, 78 P. 1023 (1904); State v. Barton, 198 Wash. 268, 88 P.2d 385 (1939). Moreover, the State has incorporated the rule into its procedures under the recidivist statute. The status of being an habitual criminal does not constitute a separate crime, but instead is applied to enhance the punishment for the latest conviction. State v. Price, 59 Wash.2d 788, 370 P.2d 979 (1963); Ex parte Towne, 14 Wash.2d 633, 129 P.2d 230 (1942). Therefore, seeking enhanced punishment under the recidivist statute does not warrant introduction of evidence of prior crimes at the trial for the latest offense. Indeed, the enhancement cannot be sought in the original information but must be sought in a supplemental information after the conviction. State v. Sayward, 63 Wash.2d 485, 387 P.2d 746 (1963).

If direct evidence of Smith's past misdeeds could not have been introduced before the jury, it seems clear that the jury should not be permitted to draw inferences to the same effect from the testimony of a witness produced by the prosecution in the presentation of its case in chief. This conclusion has been reached by many courts when confronted with similar situations. For example, the introduction into evidence of "mug shots" for purposes of identification has been held to be highly prejudicial. *See* Barnes v. United States, 124 U.S.App.D.C. 318, 365 F.2d 509 (1966); Vaughn v. State, 215 Ind. 142, 19 N.E.2d 239 (1939). The Supreme Court of Washington has itself seen prejudicial inferences in the introduction of "mug shots," State v. Devlin, 145 Wash. 44, 258 P. 826 (1927), and the inclusion of unproved aliases on the cover sheet of jury instructions, State v. Smith, 55 Wash.2d 482, 348 P.2d 417 (1960). In the present case, how-

2. In our examination of the State Record, at 91, 182, 185, 190, 194–196, 237, 239, we find adequate support for the following contention made by appellant, in his brief, at 42–43:

"* * * [T]he jury was informed (1) that the parole officer had a discussion with the appellant relating to parole matters; (2) that the parole officer was representing the appellant; (3) that the parole officer advised the petitioner of his rights; (4) that the parole officer had the right to enter the aplant's room without a search warrant but the sheriff had no such right; (5) that the parole officer would have to hold the appellant; (6) that the parole officer searched the appellant's person, and (7) that the sheriff and parole officer wanted to talk to the appellant as friends and not as a police officer or counsellor."

ever, the Supreme Court of Washington determined that the trial court's determination of "no prejudice" should not be overturned. State v. Smith, 72 Wash.2d 479, 434 P.2d 5 (1967).

The state trial court's finding of a lack of prejudice was based on the statement that "No probable inference can be drawn from the testimony on direct [examination of the parole officer] as to the status of this witness * * *." The Washington Supreme Court, however, apparently recognized the likelihood of the jury's drawing the prohibited inference when it based its holding primarily on its rule that "[a]n error, to be prejudicial error, must be one which probably would have changed the result." Id. at 9. The Court went on to say that the overwhelming body of evidence in Smith's trial would have been sufficient for conviction if Northrup had never testified. *Id.*

In a new trial without the introduction of the clothing, Smith's status as a prior convicted criminal would take on added significance and proof of such status, by inference or otherwise, might surely change the result. Moreover, there will be no occasion for the parole officer to testify to the circumstances surrounding the illegal seizure of evidence. Therefore, the question now under discussion should not arise again. We do not deem it necessary to review the Washington court's determination of lack of prejudice, nor do we find occasion to abridge the traditional position that it is not the business of the federal courts to oversee rules of evidence in the state courts. *See* Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1966); Snyder v. Massachusetts, 291 U.S. 97, 78 L.Ed. 674, 54 S.Ct. 330 (1934). For all these reasons, we leave unanswered Smith's contention that admission of the parole officer's testimony so unduly prejudiced the jury that his constitutional right to a fair trial was violated.

Upon remand, the District Court will hold Smith's habeas corpus petition in abeyance in order to afford Washington authorities a reasonable time, not exceeding sixty days, within which to conduct, if they choose to do so, a new trial in which the unconstitutionally obtained evidence is suppressed and the applicability of *Miranda* is reconsidered.

Reversed.[3]

KOELSCH, Circuit Judge (dissenting).

The court's disposition of this habeas appeal is wholly unwarranted. Resolution of factual issues is not the business of an appellate court. That is a matter for the District Court.

Here, as the opinion notes, the District Court denied the writ without holding an evidentiary hearing. It concluded that all critical factual issues had been resolved by the Washington State Court and that the findings of that court were fairly supported by the record; consistent with the suggestion in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) and pursuant to 28 U.S.C. § 2254 it deferred to the state court's determinations.

However, we now not only hold that the District Court was mistaken, but in addition we grant the writ. We have, as the opinion shows, resolved conflicts in the evidence and made findings of our own, without of course holding a hearing. For example, the decision that Smith's Fourth Amendment rights were violated is predicated upon this court's factual conclusions that the parole officer's entry into Smith's room was in furtherance of the Sheriff's "plan" to "pursue—his investigation by enlisting the aid and concerted action of Smith's parole officer to investigate the suspect" and that the

3. After the above opinion was filed, there came to our attention a published student comment that thoroughly analyzes the theories advanced for relaxing Fourth Amendment requirements in regard to parole officers. The author concludes that the function of parole would be diminished by relaxing those requirements. Note, *Extending Search-and-Seizure Protection to Parolees in California*, 22 Stanford L.Rev. 129 (1969).

parole officer's entry was pursuant to the prior request of the law enforcement officials and in concert with them. The court also finds Smith did not consent to the entry nor otherwise waive his right to object. Still further, the court finally settles the issue concerning the sufficiency of the *Miranda* warning, although expressly stating that the record of the state court on the matter is "confused and conflicting."

This court's findings, I grant, are not without evidentiary support, but as already stated our function is to review not to make findings. We should, if the majority is correct, do no more than declare the federal district court erred and return the matter there for a full hearing and valid findings.

However, I experience no difficulty in accepting the state findings. There was substantial proof that the parole officer was not the sheriff's alter ego; that Smith consented to the entry and that the essential *Miranda* warning was given.

I would likewise reject Smith's denial of fair trial contention, a point not passed upon in the opinion.

The proposition is widely recognized that proof of general bad character of an accused is highly prejudicial; it is also well settled that the introduction of such proof is error unless relevant for some purpose other than to show the likelihood that the accused committed the crime charged because of that character. But it does not follow as a matter of law that the erroneous disclosure of bad character is an error of constitutional magnitude requiring a new trial. Rather, the effect of the error must be considered in light of the surrounding circumstances, save in the rare instance, not indicated in this record, where the effect is unmistakable.

Here, the record at most shows (1) a passing reference by the prosecuting attorney in his opening statement to Smith's "parole officer," (2) testimony by a witness giving his occupation as a parole officer and (3) three statements which possibly suggest Smith was under

parole supervision. However, the proof that Smith committed the crime as charged was direct, it was essentially uncontradicted and it "fairly shrieked" Smith's guilt. The District Court, presumably applying federal standards, concluded that the error did not impinge upon constitutional rights. I cannot fairly say that conclusion was wrong. The judgment should be affirmed.