Raymond R. **MENDEZ**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 24548.

United States Court of Appeals, Ninth Circuit.

June 30, 1970.

Philip N. Andreen (argued), San Diego, Cal., for appellant.

Shelby R. Gott (argued), Asst. U. S. Atty., Harry D. Steward, U. S. Atty., San Diego, Cal., for appellee.

Before BROWNING and ELY, Circuit Judges, and BYRNE *, District Judge.

BYRNE, District Judge:

About 10:40 P.M., on November 11, 1968, Mendez drove a 1956 Buick into the United States from Mexicali, accompanied by the co-defendant, Beverly Medina. Both made a negative customs declaration. The trunk of the car contained a square metal box, which was covered by a rug and was accessible only from the rear seat.

A search of the car revealed 165 pounds of marijuana concealed in the metal box. In Mendez's wallet was found a manila envelope containing a small amount of manicured marijuana. A dexamyl capsule was discovered in Mrs. Medina's purse.

Appellant Mendez was charged in a two count indictment with (1) smug-

---

* Honorable William M. Byrne, United States Senior District Judge, Central District of California, sitting by designation.

gling the manicured marijuana found in his wallet and (2) smuggling the 165 pounds of marijuana found in the trunk of the car he was driving.

Mendez's companion, Beverly Medina, was charged with smuggling the 165 pounds of marijuana, and in a second count with smuggling a single capsule of the drug dexamyl. The district judge granted Medina's motion for acquittal as to both counts without submitting her case to the jury.

The jury found Mendez not guilty of the charge of smuggling the 165 pounds of marijuana, and guilty of the charge of smuggling the manicured marijuana. The appellant has asked us to set aside his conviction for smuggling this manicured marijuana found in his wallet.

Appellant contends that in view of our recent decision in Smith v. Rhay, 419 F. 2d 160 (December 2, 1969), adequate pre-interrogation warnings were not given in accord with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966).

In *Smith* a parolee in the custody of a sheriff and his parole officer was only advised by the parole officer that "he had the right to an attorney or to have the court appoint one for him". We held there that:

"As to the introduction at trial of Smith's oral confessions, the record does not clearly disclose that he (Smith) was warned of his rights with the specificity required in Miranda v. Arizona, 384 U.S. 436, 478–479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

"Although Smith was told that he had the right to an attorney, he was not * * * told, as required by *Miranda*, that he had the right to the presence of an attorney and that, if he could not afford one, a lawyer could be appointed to represent him *prior to any questioning*." [1]

In view of the *Smith* record described as "confused and conflicting," a divided court decided that "the prosecution did not meet the heavy burden (of demonstrating that Smith knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel) which rested upon it".

Does the record in our case clearly show that Mendez was given the specific *Miranda* statement before any questioning began? It is clear from Agent Quick's testimony detailing the panoply of Constitutional rights he set forth before Mendez [2] that the *Miranda* statements were given before interrogation began.

After giving the *Miranda* statement, Quick testified: "I asked him if he understood what I told him." Significantly, Mendez replied that "he understood what I (Quick) was saying and *he would answer my questions*". Quick was also asked in trial: "Did he say whether or not he would talk to you about the case before the Court?" Quick replied: "He said he would answer my questions".

Appellant's contention that Smith v. Rhay requires reversal in this case has no merit.

As to appellant's contention that the introduction of evidence about his "silence" violated his Fifth Amendment right against compulsory self-incrimination, it was established by the Supreme

---

1. Emphasis in the original.

2. At the trial Quick stated: "I advised him under the Constitution of the United States he had certain rights. He had the right to remain silent. He had the right to know that anything he said could be and would be used against him in a court of law or other proceeding against him. I advised him that he had a right to an attorney and that if he was unable to afford an attorney that one would be appointed for him by a United States judge or a United States commissioner. That he had the right to answer questions with an attorney present. He also had the right to answer questions then if he did not want an attorney".

Court in *Miranda, supra,* at 468, 86 S. Ct. at 1624, that:

"The prosecution may not * * * use at trial the fact that he (a defendant) stood mute or claimed his privilege in the face of an accusation."

Accord, Fowle v. United States, 410 F.2d 48 (CA 9 1969).

In the instant case, Medina told Quick that "they entered Mexico at Mexicali and proceeded directly to San Luis de Sonora, Mexico". Prior to this, Mendez told the agent that "he had only been to Mexicali".

After getting these apparently inconsistent stories, the Customs Agents took Medina before appellant Mendez and asked her to repeat her statement that they had gone to San Luis.

As to appellant's response, the prosecutor posed this question to Agent Quick:

"Upon confronting Mr. Mendez with Mr. Medina's (sic) statement that they had been to San Luis, what did Mr. Mendez say, if anything?"

The answer was: "He had nothing to say."

The trial court judge granted appellant's motion to strike the testimony. After granting the motion to strike, the trial judge denied appellant's motion for a mistrial which was grounded in the contention that any limiting instructions by the trial judge to the jury to disregard the stricken testimony would not remove the prejudicial impact of Mendez being caught in a lie.

Subsequent to limiting instructions to the jury, the motion for a mistrial was renewed on the same grounds and this time appellant's counsel included Mendez's refusal to sign the marijuana transfer tax form within its ambit.[3] This motion was also denied.

With respect to the testimony relating to the refusal to sign the Tax Act forms (Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57, had not been decided), in view of the general caution against deciding Constitutional questions which may be avoidable and in light of the fact that neither Mendez nor Medina was being prosecuted for failure to pay the tax, we believe that a better course would have been for the trial judge to have stricken the testimony on the grounds of relevancy.

In any event, we hold that the trial judge's limiting instructions were effective and he did not abuse his discretion in refusing to grant a mistrial.

It is unlikely that Mendez suffered any prejudice from the "admission" by silence that he and Medina had been in San Luis since Mendez, later in the trial, admitted going to San Luis. In fact, it would appear that Medina's statement in Mendez's presence actually *benefitted* the appellant, whose defense was built on the crucial allegation that he had acquired the automobile which contained the contraband in San Luis from a stranger. Apparently the jury believed this part of his story as they acquitted him on the count involving 165 pounds of marijuana found in the car. Appellant also told how he lost his wallet in a bar and it was found on the floor and returned to him by this same San Luis stranger. This was a little too much for the jury and they found him guilty of smuggling the manicured marijuana found in his wallet.

Appellant's last contention is that the trial court erred in failing to grant a severance under Rule 14 of the Federal Rules of Criminal Procedure. The claim is that Mendez's defense was so "inextricably tied" with Medina's that he had no effective right of confrontation against her when Medina made statements allegedly damaging to Mendez.

---

3. The trial judge also granted Mendez's motion to strike Quick's testimony about Mendez's refusal to sign the tax form. The judge instructed the jury on this point as follows: "Since the evidence was not admissible against the defendant, Constitutionally admissible, you should not consider it."

Mendez points to three out-of-court statements made by Medina, labeling these statements as "damaging evidence admissible only against Mrs. Medina." He claims that he refrained from attacking these statements from fear of ruining his own defense. We cannot agree that any of these statements were damaging to Mendez's defense.

Medina's statement that the pair had gone to San Luis was not contrary to Mendez's testimony at trial, but rather it tended to support his own defense. Her statement that Mendez had introduced her to a man named Trinidad was never introduced in evidence. The statement was alluded to by the prosecutor but was satisfactorily explained by Mrs. Medina on direct examination.

The third statement called to our attention raised an inconsistency in the co-defendant's stories about the length of time that Medina spent in the San Luis beauty parlor. Agent Quick testified that Mrs. Medina told him that she "spent several hours in a beauty parlor." In contrast, Mendez testified on cross-examination that Medina was in the beauty parolor for "no more than a (sic) hour."

 This court does not consider the confrontation rationale of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), to be applicable in a case in which the "speaking" co-defendant testifies, since the otherwise "harmed" defendant has "an opportunity to confront and cross-examine those whose statements inculpated him." Santoro v. United States, 402 F.2d 920, 922 (CA 9 1968). Here it would not benefit the appellant even if we were to agree with his argument that the *Santoro* rationale does not apply where counsel, as a matter of trial tactics, refrains from cross-examination for fear of damaging his client. If there was an incriminating statement it was certainly *de minimis*. The jury could have believed that both were telling the truth as best they remembered, since the statement was only slightly inconsistent with Mendez's testimony; nor was there any evidence from which the jury could infer that criminal activity took place during the differing time periods.

Affirmed.