UNITED STATES of America, Plaintiff–Appellee,

v.

Mark Samuel RICHARDSON, Defendant–Appellant.

No. 87–5252.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 2, 1988.

Decided June 14, 1988.

---

Carlton F. Gunn, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Steven E. Zipperstein, Asst. U.S. Atty., Crim. Div., Los Angeles, Cal., for plaintiff-appellee.

Before GOODWIN and HALL, Circuit Judges, and SCHNACKE,* District Judge.

GOODWIN, Circuit Judge:

Mark Samuel Richardson timely appeals from his conditional plea of guilty to one count of theft of government property in violation of 18 U.S.C. § 641. We affirm.

In April 1987, Detective Mumma of the Corona Police Department began to suspect that Richardson was involved in a service station burglary. Mumma knew that another detective was seeking an arrest warrant for Richardson regarding an older case in Riverside County. Mumma further discovered that Richardson was on parole in both Orange and Riverside counties.

Mumma contacted both of Richardson's probation officers. Carolyn Frazier, Richardson's Riverside probation officer, told Mumma that Richardson was in violation of his probation in Riverside County and also in Orange County. Mumma asked Frazier if there was a search condition attached to Richardson's probation and indicated that he was interested in conducting a search pursuant to the search condition if Frazier agreed. Frazier told Mumma that there was a search condition, and gave her permission to Mumma to conduct a probation search when Mumma arrested Richardson.

Mumma also contacted Deborah Bashara, Richardson's Orange County probation officer. Bashara referred Mumma to the probation officer who was taking over Richardson's case, Darlyne Pettinicchio. Pettinicchio gave her permission to conduct a search if and when Mumma arrested Richardson.

Each probation officer subsequently sought arrest warrants for Richardson's probation violations. On May 4, a warrant was issued for Richardson's probation violation in Riverside County.

On May 6, Mumma obtained an arrest warrant for Richardson. On May 8, Mumma, accompanied by several other law enforcement officers, arrested Richardson at his home while he was seated in his car in front of his residence. No probation officers accompanied them. They then searched the car and the house, and found various coins, stamps, tools, maps and notes. This evidence led Richardson to confess to approximately 20 thefts from post office vending machines.

The district court found that the search conducted by Mumma was a valid probation search, that it was not a subterfuge or a substitute for normal criminal investigation, and that none of Richardson's rights had been violated. The court further found that both Frazier and Pettinicchio authorized the search because they believed the search would serve probationary goals. The court held that there was no requirement that probation officers be on the scene in order to validate a probation search.

In *Griffin v. Wisconsin,* —— U.S. ——, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), the Court held that probation searches conducted pursuant to state law do not violate the fourth amendment. The Court explained that a state's operation of its probation

* The Honorable Robert H. Schnacke, United States District Judge, Northern District of California, sitting by designation.

system presents "special needs" beyond normal law enforcement, such as close supervision of probationers, that may justify departing from the fourth amendment's usual warrant and probable cause requirements. *Id.* at 3168. The Court ruled that a state probation search satisfies the fourth amendment's general requirement of reasonableness if it is conducted pursuant to a valid state regulation governing probationers. *Id.* at 3171.

Richardson does not challenge the district court's conclusion that the search of his residence was "authorized by and consistent with California law." California law permits law enforcement officers to conduct probation searches. *See People v. Bravo,* 43 Cal.3d 600, 238 Cal.Rptr. 282, 738 P.2d 336 (1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1074, 99 L.Ed.2d 234 (1988). Richardson suggests, however, that the fourth amendment must place some limitation on state regulations which allow searches of probationers. Richardson contends that the fourth amendment requires a federal court to suppress evidence discovered in a probation search initiated solely by and conducted solely by police officers. He also suggests that the fourth amendment requires adequate supervision of the police search by probation officers.

We have said that a parole search may not be used as a "subterfuge for a criminal investigation." *See Latta v. Fitzharris,* 521 F.2d 246, 249 (9th Cir.) (*en banc*) (plurality opinion), *cert. denied,* 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975). A probation officer must not act as a "stalking horse" for the police. *United States v. Jarrad,* 754 F.2d 1451, 1454 (9th Cir.), *cert. denied,* 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed. 2d 78 (1985). A parole officer is not a stalking horse "if he, rather than the police, initiate[s] the search in the performance of his duties as a parole [or probation] officer." *Id.* When, on the other hand, a parole or probation officer conducts a parole or probation search on prior request of and in concert with law enforcement officers, the officer "is in such a case acting, not as the supervising guardian, so to speak, of the parolee, but as the agent of the very authority upon whom the require-

ment for a search warrant is constitutionally imposed." *Smith v. Rhay,* 419 F.2d 160, 162–63 (9th Cir.1969).

■ Whether or not a parole or probation officer is acting as a stalking horse is a question of fact, reviewed for clear error. *See Jarrad,* 754 F.2d at 1454. The court below found that the probation officers were not acting as stalking horses. Ample evidence supported that conclusion. When contacted by Mumma, Frazier was already concerned about Richardson's probation violations. She approved the search. Furthermore, she sought and obtained a warrant to revoke Richardson's probation in Riverside County before Mumma arrested and searched Richardson. These factors support her testimony that she felt probationary goals would be served by the search and that she would have searched Richardson if Mumma had not.

Similarly, the record indicates that Bashara and Pettinicchio were concerned about Richardson's probation violations, prior to Mumma's call. This concern supports Pettinicchio's testimony that she felt that the search would serve probationary goals, and that she would have searched the defendant even if Mumma had not called. As this court noted in *Jarad:*

> Parole and law enforcement officials frequently cooperate in the course of their work. Parole officers often receive information concerning their parolees that is uncovered in police criminal investigations. The fact that police investigation of [a crime] ... preceded the involvement of parole officials does not in itself indicate that the search was initiated by police officers.

754 F.2d at 1454.

■ The district court's finding that the search was not a subterfuge for criminal investigation was also supported by the record. Mumma had already obtained an arrest warrant before he searched Richardson. A neutral judicial officer had already found that probable cause existed to arrest Richardson for burglary and receiving stolen property. Thus, unlike in *Smith,* the initial criminal investigation which led to

arrest was completed. *Cf. Smith*, 419 F.2d at 161–63. Furthermore, one probation officer had already obtained a warrant to revoke Richardson's probation, and the other had sought a warrant.

The district court's conclusions that the probation officers were not acting as stalking horses, and that the probation search was not a subterfuge for criminal investigation, were not clearly erroneous.

Richardson also argues that the rationale behind allowing searches of probationers without warrants and only upon a showing of reasonable cause, requires that a probation officer conduct the search, accompany those who are conducting the search or at least closely supervise those who are conducting the search. In *United States v. Consuelo–Gonzalez*, 521 F.2d 259, 266 (9th Cir.1975), this court interpreted the Federal Probation Act to require that probation searches "be by, or under the immediate and personal supervision of, probation officers."

However, this court has not required presence or immediate supervision for state searches. *See United States v. Dally*, 606 F.2d 861, 863 (9th Cir.1979) (per curiam). In *Dally*, we found adequate supervision where a parole search was led by a special agent of the California Department of Corrections. The agent had consulted with the defendant's parole officer, and had been given directions to search only if the officers determined that the defendant was violating his parole. *Id.*

*Griffin* is inconclusive on this issue. Some of the language lends support to a supervision requirement. At one point the Court contrasted the probation officer with "the police officer who normally conducts searches against the ordinary citizen." 107 S.Ct. at 3169. The Supreme Court, however, also focused on the probation officer's role when juxtaposed with the roles of neutral magistrates and police officers. The Court relied in part on the probation officer's judgment that the search was reasonable. 107 S.Ct. at 3169. The Court reasoned that a warrant requirement would undermine the goals of probation by "setting up a magistrate rather than the proba-

tion officer as the judge of how close a supervision the probationer requires." *Id.; see also id.* at 3170 n. 6 (stating that the "search *decision* should be left to the expertise of probation authorities rather than a magistrate") (emphasis added).

On balance we believe the Court approved the concept that the decision to authorize the search was more important than who was present when the search was made. Given the large case loads of most probation officers, requiring the probation officer's physical presence during every probation search or requiring close supervision of all probation searches would unnecessarily interfere with the twin goals of probation: rehabilitation of the probationer and protection of society. Although a complete delegation of authority may be evidence that the probation officer is acting as a stalking horse, or that the search is a subterfuge for criminal investigation, the officer's presence during the search or close supervision of the search could equally be manipulated if subterfuge were the objective.

In this case, the trial court found, and we agree, that Frazier's and Pettinicchio's authorizations before the search were valid. As noted above, ample evidence supports the conclusion that the probation officers felt that the search would serve probationary goals. Furthermore, their permission for the police to search was conditioned on Mumma's first arresting Richardson. This condition is at least as confining as the condition in *Dally*.

For the foregoing reasons, the judgment below is AFFIRMED.