21 F.3d 1117
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jonathan Laird McDONALD, Defendant-Appellant.
 No. 93-50168.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 9, 1994.*
Decided April 19, 1994.
 
 1
 Before: BRIGHT**, WIGGINS, and T.G. NELSON, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 FACTS AND PRIOR PROCEEDINGS
 
 3
 On January 9, 1992, Gary Wartenberg was arrested for possession of counterfeit notes. Wartenberg immediately told Secret Service agents that he received the notes from John Coppini and Paul Vera. Coppini was arrested that same day. In monitored phone conversations with Coppini, Vera revealed that McDonald ("Appellant") was Vera's source for counterfeit notes. Vera was arrested on January 10, 1992.
 
 
 4
 On the day of his arrest, Vera confirmed that he had received the notes from Appellant. Vera said that a few days earlier Appellant had shown him a trash bag that Appellant claimed contained $152,000 in counterfeit currency. According to Vera, Appellant asked Vera to store the trash bag at Vera's residence. Vera took agents to his residence and showed them a trash bag containing $108,060 in counterfeit currency.
 
 
 5
 Vera then made monitored calls to Appellant. In one call, Vera told Appellant that he had a buyer for additional counterfeit money. Appellant told Vera to come to Appellant's house to obtain additional bills. At about 7:30 p.m. on January 10th, Vera entered Appellant's house and returned 10 minutes later with a backpack containing approximately $48,000 in counterfeit bills. Vera told agents that the money came from a plastic trash can next to Appellant's front door.
 
 
 6
 The Secret Service agent in charge, Gappert, then learned from Vera that Appellant was on parole. Gappert ran a computer criminal history check on Appellant. The check revealed that Appellant was under supervision of the California Youth Authority through 1996. Gappert then tracked down parole officer Perry Brooks at his home "to confirm that fact." ER 69. Brooks was the supervisor of Appellant's parole officer, Bouwman. Bouwman was not available.
 
 
 7
 The parties dispute who proposed the idea of a search. Gappert's testimony is not fully consistent with Brooks's. In his affidavit, Gappert says he advised Brooks "of [Appellant's] participation in a counterfeiting conspiracy and asked [ ] Brooks to authorize a parole search of [Appellant's] residence.... Brooks requested an immediate meeting [at the police station] to discuss [Appellant's] situation in greater detail." ER 69-70.
 
 
 8
 Brooks, on the other hand, testified that on the phone that night, Gappert "asked [Brooks] if [Appellant] had search conditions," ER 174, which are conditions of parole that allow authorities to search a parolee or his dwelling at any time without a warrant. Another parole condition prohibits a parolee from possessing any type of firearm. Brooks told Gappert that Appellant was subject to both of these conditions.
 
 
 9
 Brooks said that Gappert did not request a parole search, however, until Brooks arrived at the police station. ER 186. Brooks testified that by the time Gappert requested the parole search, Brooks "was prepared to do the parole search anyway." Id. Brooks said that he had "determined that there needed to be a parole search before [he] arrived at [the police station]." Id.
 
 
 10
 In Gappert's investigation report, Gappert noted that "Agent Brooks was appraised of th[e] investigation, and consented to a parole search of [Appellant's] residence." ER 81. Brooks indicated he did not fully agree with this statement, however. Rather, Brooks said, "I determined based upon the information that [Gappert] gave me that there needed to be a parole search." ER 185. Brooks did describe his decision to search as "consent" at one point but later disclaimed that description by saying, "Now, if that's consenting I consented." ER 185, 187. Brooks testified that he ordered the parole search based on his own, independent judgment.
 
 
 11
 Once Brooks arrived at the police station, Gappert told Brooks, based on information obtained from Vera, that Appellant was in possession of a firearm, additional amounts of counterfeit currency, and possibly counterfeit printing plates. Brooks told Gappert that this information was sufficient to justify a parole search. Brooks also told Gappert that a warrant would not be necessary because a parole search would be initiated based on Appellant's violation of the conditions of his parole.[1] Brooks spoke with Bouwman over the phone for approximately 15 minutes prior to the search. Bouwman concurred in Brooks's judgment that a search was justified.
 
 
 12
 Brooks, Gappert, Vera, and others went to Appellant's residence at about 10:30 p.m. on January 10th. Vera entered first, carrying the backpack filled with counterfeit bills, but Vera quickly walked back out of the house after leaving the backpack with Appellant. Shortly thereafter, Brooks and then others, including Gappert, entered the home. Brooks, on entering, announced that he was a parole officer. Appellant was in the upstairs bedroom. When Brooks found Appellant, Brooks identified himself as Bouwman's supervisor and informed Appellant that he and other officers were conducting a parole search. The backpack filled with counterfeit bills and a .22 caliber handgun were found in the bedroom.
 
 
 13
 Appellant's parole was revoked at a hearing on March 3, 1992, based on his possession of the handgun and counterfeit money. Later, on June 30, 1992, a grand jury returned an indictment against Appellant. In the ensuing criminal proceeding, Appellant moved to suppress the evidence obtained in the search of his dwelling, on the ground that Brooks had acted merely as a "stalking horse" for Secret Service agent Gappert and police investigators. The district court found that there was a valid parole search and denied the motion to suppress. Appellant then entered a plea of guilty conditioned on his right to appeal the denial of his suppression motion. Appellant now appeals.
 
 DISCUSSION
 
 14
 "Whether a parole officer is a 'stalking horse' ... is a question of fact subject to the clearly erroneous standard of review." United States v. Butcher, 926 F.2d 811, 815 (9th Cir.), cert. denied, 111 S.Ct. 2273 (1991); United States v. Richardson, 849 F.2d 439, 441 (9th Cir.), cert. denied, 488 U.S. 866 (1988).
 
 
 15
 Generally, a parole officer authorized by state law may search a parolee if the officer "reasonably believes that such search is necessary in the performance of his duties." Latta v. Fitzharris, 521 F.2d 246, 250 (9th Cir.) (en banc) (plurality), cert. denied, 423 U.S. 897 (1975); id. at 253 (Choy, J., concurring). Such a parole officer needs neither a warrant nor probable cause. Id. at 250-51. However, "the police may not use a parole officer as a 'stalking horse' to evade the fourth amendment's warrant requirement." United States v. Harper, 928 F.2d 894, 897 (9th Cir.1991). "[A] parole search may not be used as a subterfuge for a criminal investigation." Richardson, 849 F.2d at 441 (internal quotations omitted); Butcher, 926 F.2d at 815.
 
 A. Appellant's Argument
 
 16
 Appellant relies primarily on Smith v. Rhay, 419 F.2d 160 (9th Cir.1969), in which this court found that a parole officer acted as a "stalking horse" for police. In Smith, various articles of clothing were missing from the store at which Smith's wife worked. No signs of breaking and entering were apparent. The sheriff suspected a burglar might have used a key. Smith had access to a key. Having no search warrant and "not purporting to have grounds for arrest," id. at 162, the sheriff enlisted the aid of Smith's parole officer. He told the parole officer about the burglary, the key, and Smith's access. The sheriff said he was interested in finding the key and wanted to talk to Smith. Then the sheriff and parole officer went to find Smith.
 
 
 17
 After locating Smith at a restaurant, the officers went with Smith to Smith's hotel room, where several of the missing articles of clothing lay in plain sight. The parole officer then informed Smith that because Smith was on parole, the officers needed no search warrant to search the room. The goods were seized. Smith was arrested and later convicted. Id. at 161-62. In holding the search invalid, the court stated:
 
 
 18
 We think it obvious ... that a parole officer may not conduct a warrantless search of items in the parolee's possession while acting on the prior request of law enforcement officials and in concert with them. The parole officer is in such a case acting, not as the supervising guardian, so to speak, of the parolee, but as the agent of the very authority upon whom the requirement for a search warrant is constitutionally imposed. To permit concerted effort among officials in an attempt, such as is manifest here, to circumvent Smith's fourth amendment rights cannot be done.
 
 
 19
 Id. at 162-63 (emphasis in original).
 
 
 20
 Appellant claims that certain facts in the instant case show that Brooks acted as a stalking horse. Secret Service agents had probable cause to search Appellant's residence and chose not to obtain a search warrant. Instead, they located Brooks at home for the purpose of obtaining authorization to search. According to Gappert's testimony, Gappert requested authorization and Brooks gave it to him. Appellant notes that some of this court's cases have focussed on who initiated the search. E.g., United States v. Jarrad, 754 F.2d 1451, 1454 (9th Cir.) (holding a parole search to be proper, in part because the parole officer initiated the search), cert. denied, 474 U.S. 830, and cert. denied sub nom., McManamy v. United States, 474 U.S. 830 (1985). Here, Appellant points out, Brooks was not contemplating any type of search or other action regarding Appellant until Brooks was contacted by Gappert.
 
 B. Appellee's Argument
 
 21
 In rebuttal, the government ("Appellee") argues that Brooks plainly had a reasonable basis to conduct a parole search. The evidence presented to Brooks reasonably indicated a parole violation. Furthermore, Appellee notes that in Jarrad the fact that a police investigation was underway before the parole officer became involved did not make the parole officer a stalking horse:
 
 
 22
 Parole and law enforcement officials frequently cooperate in the course of their work. Parole officers often receive information concerning their parolees that is uncovered in police criminal investigations. The fact that police investigation ... in this case preceded the involvement of parole officials does not in itself indicate that the search was initiated by police officers.
 
 
 23
 754 F.2d at 1454. "[P]olice and parole officers are entitled to work together to achieve their objectives; concerted action does not in and of itself make a search constitutionally infirm." Harper, 928 F.2d at 897.
 
 
 24
 Appellee urges this court to focus on the conduct and state of mind of Brooks and Bouwman. "The proper question is whether the parole officer used [his] authority to help the police evade the fourth amendment's warrant requirement or whether the parole officer cooperated with the police to achieve [his] own legitimate objectives." Harper, 928 F.2d at 897. Appellee points out that the record contains numerous items of evidence supporting the district court's finding that the search was undertaken for legitimate, parole objectives: Brooks's efforts late at night to determine whether a parole search should be made; Brooks's making the determination to search Appellant's residence prior to reaching the police station; Brooks's conference with Bouwman regarding the grounds for the search; Brooks's leading the search, entering the house first, and announcing that a parole search would take place; and the revocation of Appellant's parole on the basis of evidence obtained in the search. Appellee notes that unless this court has a "definite and firm conviction" that the district court erred in its factual ruling, this court should allow the decision to stand on the evidence that supports it. Anderson v. Bessemer City, 470 U.S. 564, 573 (1985).
 
 
 25
 Based on this evidence, Appellee claims finally that the instant case is more like Jarrad, Richardson, Butcher, and Harper than like Smith. Furthermore, Appellee notes, in Smith the sheriff lacked probable cause or even grounds to arrest Smith. Here Secret Service agents had probable cause and could have obtained a warrant. But a warrant would have been duplicative, Appellee implies, if Brooks had already decided to do a parole search independently, relying on his own judgment.
 
 C. Ruling
 
 26
 We affirm. As Appellee points out, testimony shows that the search was undertaken for legitimate parole objectives. The parole officer was merely cooperating with the Secret Service investigation. Brooks testified that he independently determined to search Appellant's residence before he was asked to authorize a parole search. In light of the evidence, we cannot form a definite and firm conviction that the district court erred. This case is like Jarrad, Richardson, Butcher, and Harper.
 
 
 27
 That Gappert first brought the potential parole violation to Brooks's attention is irrelevant for reasons noted by Appellee. Moreover, that Gappert asked Brooks whether Appellant was subject to search conditions, or if Brooks was going to authorize a search, does not invalidate Brooks's decision. At the height of the investigation, Gappert could legitimately wonder whether Brooks was going to do a search that Gappert would have to do if Brooks did not. Gappert had probable cause and could have obtained a warrant. But a warrant would have been useless if Brooks had already searched Appellant's residence and taken the evidence. The more reasonable approach was the one Brooks and Gappert took: to cooperate together in a parole search of Appellant's residence.
 
 
 28
 Smith is distinguishable for reasons cited by Appellee and for the following reasons. Smith condemned a parole officer's action in concert with and at the request of a law enforcement officer. Concerted action alone is insufficient to invalidate a search, however, as Jarrad, Butcher, and Harper show. Furthermore, testimony shows that Brooks decided to conduct a parole search on the way to the police station, before Gappert asked Brooks to authorize such a search. Thus, Brooks was not acting on Gappert's request. Finally, in Smith the court found that the parole officer was acting as an agent of the law enforcement officer. Several items of testimony in the instant case support the district court's decision that Brooks was not acting as Gappert's agent. This case therefore differs factually from Smith. Brooks, rather than Gappert, initiated this search within the meaning of Jarrad, Richardson, Butcher, and Harper.
 
 
 29
 AFFIRMED.
 
 
 
 *
 Hon. Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Brooks testified that he did not think that search warrants could be obtained at 10:00 at night but that that factor played no role in his decision. ER 180. He said, "I didn't even think about that at that particular time." Id