24 F.3d 252
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Guillermo SOLORANZO-BARBA, Defendant-Appellant.
 No. 93-50363.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 9, 1994.
Decided April 18, 1994.
 
 Before: BRIGHT*, WIGGINS, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 FACTS AND PRIOR PROCEEDINGS
 
 2
 On February 25, 1992, DEA Special Agent Robert Dias received information from a confidential source that one Guillermo Barba ("Appellant") was conspiring to smuggle and import cocaine from Mexico. From utility and telephone company records, Dias located Appellant's house, where Dias and others then began surveillance. Surveillance continued through February 27th. As of the 27th, Dias thought he still lacked sufficient information to obtain a search warrant.
 
 
 3
 Dias learned, however, that Appellant was on probation. On the 27th, Dias called Appellant's probation officer, Joyce Spicer. At the time, Spicer was responsible for about 600 probationers. She had never heard Appellant's name before Dias called. (Spicer had taken over Appellant's case in December, 1991.) Dias asked Spicer whether Appellant was subject to fourth amendment waiver conditions. She said he was. The waiver conditions stated that Appellant submitted "his person, property, place of residence, vehicle, [and] personal effects to search at any time, with or without a search warrant, and with or without reasonable cause, when required to do so by the probation officer or any law enforcement officer." ER 12, 68-69.
 
 
 4
 Then Dias informed Spicer that he had "information [that] suggested" Appellant was conspiring to import and distribute cocaine and that "perhaps a search of his residence might be a good idea." ER 64. Spicer agreed. Possession of drugs would be a violation of Appellant's probation. When Dias suggested Spicer conduct the search, Spicer said she did not have time. Spicer said that if the search was to be done, Dias should go ahead and do it, and contact Spicer when the search was completed. Spicer faxed Dias a copy of Appellant's probation conditions.
 
 
 5
 On the afternoon of February 27th, Dias and about seven other agents and officers initiated the search. No probation officer was present. The group approached the house with guns drawn as Appellant was coming out the front door. Agents confronted Appellant and informed him they were there "to conduct a state fourth waiver search." ER 67. Appellant said nothing. Agents detained Appellant outside the house.
 
 
 6
 Then agents, with guns still drawn, made a quick search of the residence, supposedly to check for people and guns. They found another man in the house. They also found three duffel bags. After the house was "secure[d]," ER 86-87, Dias went back to Appellant. Dias asked Appellant if he lived in the house. Appellant answered, "Yeah." ER 87. Dias showed Appellant a copy of the probation order containing the search condition. Then Dias said, "Even though we can search your house, will you give us consent to search inside?" Appellant again said, "Yeah." Id. Dias indicated that at this time Appellant was cooperative. From the time agents first approached the house to the time Appellant said "Yeah" a second time, approximately 30 seconds had elapsed. Dias testified that he, Dias, did not find the duffel bags himself and did not know that the duffel bags had been found when he sought consent from Appellant to search the house. The duffel bags contained contraband.
 
 
 7
 In the ensuing criminal proceeding, Appellant moved to suppress evidence obtained in the search of the house. Even though Appellant had violated his probation, the state took no steps by the time of the suppression hearings to charge Appellant with a probation violation or revoke his probation. Spicer indicated she would wait until Appellant was convicted of importing and dealing drugs. The district court denied the motion to suppress, ruling that the search was not a subterfuge for a criminal investigation (and thus that Spicer was not a stalking horse for the agents), that Appellant had given a valid consent, and that Appellant's probation conditions waived his fourth amendment rights. Following entry of judgment of conviction, Barba timely appeals.
 
 DISCUSSION
 
 8
 1. Stalking Horse?
 
 
 9
 "Whether a parole officer is a 'stalking horse' ... is a question of fact subject to the clearly erroneous standard of review." United States v. Butcher, 926 F.2d 811, 815 (9th Cir.), cert. denied, 111 S.Ct. 2273 (1991); United States v. Richardson, 849 F.2d 439, 441 (9th Cir.), cert. denied, 488 U.S. 866 (1988). The district court's decision should stand unless we have a "definite and firm conviction" that the decision was erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573 (1985).
 
 
 10
 Generally, a parole or probation officer authorized by state law may search a parolee or probationer if the officer "reasonably believes that such search is necessary in the performance of his duties." Latta v. Fitzharris, 521 F.2d 246, 250 (9th Cir.) (en banc) (plurality), cert. denied, 423 U.S. 897 (1975); id. at 253 (Choy, J., concurring). Such an officer needs neither a warrant nor probable cause. Id. at 250-51. However, "police may not use a parole [or probation] officer as a 'stalking horse' to evade the fourth amendment's warrant requirement." United States v. Harper, 928 F.2d 894, 897 (9th Cir.1991); United States v. Merchant, 760 F.2d 963, 969 (9th Cir.1985), cert. dismissed, 480 U.S. 615 (1987). "[A] parole [or probation] search may not be used as a subterfuge for a criminal investigation." Richardson, 849 F.2d at 441 (internal quotations omitted); Butcher, 926 F.2d at 815; Merchant, 760 F.2d at 969.
 
 
 11
 "Who initiated the search?" is a question central to whether the search was a subterfuge. E.g., United States v. Jarrad, 754 F.2d 1451, 1454 (9th Cir.), cert. denied, 474 U.S. 830, and cert. denied sub nom., McManamy v. United States, 474 U.S. 830 (1985). Moreover, the purpose of the search is relevant: "The proper question is whether the parole officer used her authority to help the police evade the fourth amendment's warrant requirement or whether the parole officer cooperated with the police to achieve her own legitimate objectives." Harper, 928 F.2d at 897; Smith v. Rhay, 419 F.2d 160, 162-63 (9th Cir.1969).
 
 
 12
 Appellant notes that the court has invalidated searches in Smith and Merchant. In Smith, various articles of clothing were missing from the store at which Smith's wife worked. No signs of breaking and entering were apparent. The sheriff suspected a burglar might have used a key. Smith had access to a key. Having no search warrant and "not purporting to have grounds for arrest," id. at 162, the sheriff enlisted the aid of Smith's parole officer. The sheriff told the parole officer about the burglary, the key, and Smith's access. The sheriff said he was interested in finding the key and wanted to talk to Smith. The sheriff and parole officer then went to find Smith.
 
 
 13
 After locating Smith, the officers went with Smith to Smith's hotel room, where several of the missing articles of clothing lay in plain sight. The parole officer then informed Smith that because Smith was on parole, the officers needed no search warrant to search the room. The goods were seized, and Smith was arrested and later convicted. Id. at 161-62. In holding the search invalid, the court stated: "We think it obvious ... that a parole officer may not conduct a warrantless search of items in the parolee's possession while acting on the prior request of law enforcement officials and in concert with them. The parole officer is in such a case acting[ ] not as the supervising guardian ... of the parolee[ ] but as the agent of the very authority upon whom the requirement for a search warrant is constitutionally imposed." Id. at 162-63 (emphasis in original).
 
 
 14
 In Merchant, law enforcement authorities obtained a court order declaring that the defendant probationer was subject to a search condition. Probation authorities were never contacted. In fact, no probation officer had been assigned to the defendant's case and the state never made any efforts to rehabilitate the defendant. Relying only on the search condition and a report of gunfire on the defendant's property, law enforcement officers searched the defendant's residence without a warrant. The Ninth Circuit held the search to be a subterfuge for a criminal investigation. 760 F.2d at 969.
 
 
 15
 Appellant claims the instant case is like Smith and Merchant. Here, as in Smith, the law enforcement officer lacked probable cause for the search and did not purport to have grounds for arresting Appellant. As in Smith, the law enforcement officer, Dias, sought the probation officer's aid to circumvent Appellant's fourth amendment rights. Appellant calls Spicer's approval of the search a mere rubber stamp, similar to the search condition in Merchant or the presence of the parole officer in Smith.
 
 
 16
 Appellant claims the Ninth Circuit has upheld a probation or parole search in which law enforcement officers were involved only when (1) the probation or parole officer was substantially involved in the search itself or the decision to search, or (2) any concurrent criminal investigation was substantially complete. When neither (1) nor (2) was shown, however, the circuit has held the search invalid, Appellant claims. Appellant points out that in Harper, Butcher, Richardson, Jarrad, and Latta, in which the court approved a probation or parole search, (1) was present. Specifically, the parole or probation officer was involved in the search, requested the search for legitimate parole or probation reasons, or was investigating the parolee or probationer for parole or probation violations before learning of a concurrent law enforcement investigation. Harper, 928 F.2d at 897; Butcher, 926 F.2d at 815; Richardson, 849 F.2d at 441; Jarrad, 754 F.2d at 1453-54; Latta, 521 F.2d at 247. Appellant claims that (2) was present in Richardson. 849 F.2d at 441-42. To distinguish these cases, Appellant asserts that Spicer (1) did not participate in the search, (2) did not approve the search for legitimate probation reasons, and (3) was not investigating Appellant before she learned of the law enforcement investigation. Moreover, here the criminal investigation was incomplete.
 
 
 17
 In rebuttal, Appellee points out that police and probation officers frequently cooperate. See Harper, 928 F.2d at 897; Butcher, 926 F.2d at 815. Appellee also claims that the mere fact that Dias's investigation preceded Spicer's involvement should not invalidate the search. See Jarrad, 754 F.2d at 1454. Appellee argues that this case is more like Richardson and Jarrad than like Smith. Here, as in Richardson, the probation officer approved the search and the search fulfilled probationary goals.[1] In Richardson, the court recognized that "the large case loads of most probation officers" prohibit them from attending or maintaining close supervision over searches. 849 F.2d at 442. The Richardson court found to be valid a search at which no probation or parole officer was present. Id.[2]
 
 
 18
 We find that the search was not a valid probation search. The key issue is who had control of the search. Smith guides our decision. In both Smith and this case, law enforcement officers alleged neither probable cause to search nor grounds to arrest. (In both cases, a parole or probation search may have been the only way law enforcement officers could continue criminal investigation.) In both cases, law enforcement officers approached the parole or probation officer, who to that point had not been investigating, or even been interested in, the defendant. In both, the parole or probation officer purported to justify the search by reference to the search condition.
 
 
 19
 Moreover, the primary purpose of the searches in both Smith and the instant case was to obtain evidence to convict the defendant of a criminal violation, notwithstanding that the searches were also relevant to the defendants' probation or parole. In Smith, the court found the parole officer to have acted as an agent of law enforcement, even though Smith's participation in a burglary would undoubtedly affect his parole. In the instant case, Spicer played a similar role. No evidence indicates any action by Spicer to rehabilitate Appellant, give him "supervision or counseling," see Merchant, 760 F.2d at 969 (indicating that such acts serve legitimate probation purposes), or in any other way act in his interests as his probation officer. Spicer's only action with respect to Appellant was to authorize a search. Spicer took no action regarding Appellant's probation violation, preferring to wait until Appellant was convicted of importing and distributing cocaine. The primary purpose of the search in this case was therefore to obtain evidence leading toward a criminal conviction. No evidence indicates a more controlling purpose. Thus, Spicer was in effect as much an agent of law enforcement as was the parole officer in Smith. Smith condemns precisely this sort of piggybacking.
 
 
 20
 Because Spicer was acting primarily in the interest of law enforcement, the fact that Spicer purported to make her own determination of the need to search does not by itself indicate the presence of a legitimate probationary purpose. The parole officer in Smith also determined that a search was justified.
 
 
 21
 Finally, Spicer fully delegated her authority to search to Dias. "[A] complete delegation of authority [from probation to law enforcement officer] may be evidence that the probation officer is acting as a stalking horse...." Richardson, 849 F.2d at 442. Richardson upheld a search at which no probation officer was present because the probation officer imposed conditions on the search that limited the authority delegated to law enforcement officers. Id. But here no conditions were imposed to limit Dias's authority, indicating that the search was a subterfuge for criminal investigation.
 
 
 22
 Harper, Butcher, Richardson, Jarrad, and Latta are distinguishable. In these cases parole or probation officers were seeking, prior to contact with law enforcement officers, to arrest or search defendants for parole- or probation-related reasons independent of law enforcement concerns. In the instant case, Spicer obtained all of her knowledge from Dias. Moreover, she acted only at Dias's request.
 
 
 23
 2. Consent?
 
 
 24
 Appellant contends he gave no valid consent to search, citing primarily Bumper v. North Carolina, 391 U.S. 543 (1968), and United States v. Shaibu, 920 F.2d 1423 (9th Cir.1990). Whether consent occurred is a factual determination subject to the clearly erroneous standard of review. Shaibu, 920 F.2d at 1425. However, if coercion is implicit in the search, as in Bumper, "there can be no consent as a matter of law." United States v. Winsor, 846 F.2d 1569, 1573 n. 3 (9th Cir.1988).
 
 
 25
 In Bumper, law enforcement officers met a woman at the front door of her house. One officer announced he had a warrant to search. She responded, "Go ahead." At a later hearing, after the warrant was found to be ineffective, the woman said she thought resistance to the search would be futile because the officers had a warrant and were going to search anyway. The Court held that no consent had occurred:
 
 
 26
 When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority.
 
 
 27
 ....
 
 
 28
 When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion--albeit colorably lawful coercion. Where there is coercion there cannot be consent.
 
 
 29
 Id. at 548-50 (citations omitted).
 
 
 30
 Amos v. United States, 255 U.S. 313 (1921), is also apposite. In Amos, IRS agents found a woman at home, identified themselves, and told her they had come to search. She opened the door, whereupon the officers entered and searched. Id. at 315. The Court held that "under the implied coercion here presented, no ... waiver was intended or effected." Id. at 317. In Shaibu, police followed the defendant through the open door of his apartment and, relying only on the defendant's failure to object, proceeded to search. 920 F.2d at 1424-25. The court held no consent had been given. The Shaibu court "indulge[d] every reasonable presumption against waiver" of the warrant requirement. 920 F.2d at 1426-27 (internal quotations omitted).
 
 
 31
 Appellant claims the instant case is like Bumper and Shaibu. Agents, with guns drawn, informed Appellant that they were there to search the house. Then they quickly searched the residence preliminarily. After the house was "secured," Dias showed Appellant a copy of the probation order outlining the search condition. Then Dias said, "Even though we can search your house, will you give us consent to search inside?" Appellant responded, "Yeah." Appellant argues that here, as in Bumper, coercion was implicit, making free and voluntary consent impossible. Appellant claims that even if true consent were possible, it was probably not present here given that the court must indulge every reasonable presumption against it. See Shaibu, 920 F.2d at 1426-27.
 
 
 32
 In rebuttal, Appellee argues that a person in custody may voluntarily consent to a search, United States v. Page, 302 F.2d 81, 83 (9th Cir.1962), and that an individual need not be informed of the right to refuse consent or be given Miranda warnings in order for the consent to be voluntary, United States v. Mendenhall, 446 U.S. 544, 558 (1980); United States v. Ritter, 752 F.2d 435, 439 (9th Cir.1985). Appellee also claims that Appellant is an adult and capable of consenting; that Appellant cooperated with the agents; and that there is no evidence that the search was conducted improperly.
 
 
 33
 We hold that Appellant did not consent to the search. As in Bumper and Amos, the officers' statement of authority and their clear intention to search the house, whether Appellant consented or not, made coercion implicit in this search. Drawn guns made that coercion explicit. If consent was not present in Bumper and Amos, it was not present here, as a matter of law. Consent is possible when a person is merely in custody or simply fails to recognize that he can refuse consent, or before Miranda rights are given. But the situation is different when an officer, with his seven or so fellow officers who have just stormed a house with guns drawn, shows the householder a legal document allegedly giving the officer a right to search the house and indicates he is going to search the house with or without consent. Following such a display of force, the capitulation indicated by the statement "Yeah" cannot reasonably be construed to be consent freely and voluntarily given.
 
 
 34
 3. Waiver?
 
 
 35
 Appellee argues that Appellant waived his fourth amendment rights as a condition of probation. Under California law, "[a] probationer ... consents to the waiver of his Fourth Amendment rights in exchange for the opportunity to avoid service of a state prison term." People v. Bravo, 738 P.2d 336, 341 (Cal.1987), cert. denied, 485 U.S. 904 (1988).
 
 
 36
 In reply, Appellant claims that a probation waiver of fourth amendment rights is not a complete waiver to contest the validity of a search. United States v. Johnson, 722 F.2d 525, 528 (9th Cir.1983), held that some reasonable suggestion of criminal activity must be present before a search of a probationer is justified. Appellant also notes, citing Richardson and Jarrad, that the waiver does not allow the probation officer to act as a stalking horse or the probation search to be used as a subterfuge for a criminal investigation.
 
 
 37
 Appellant is correct. He did not completely waive his rights. In Johnson and Merchant, this court held that (1) a search must be reasonable even though conducted pursuant to a California probationer's search condition; and (2) a search conducted pursuant to a probation search condition may be a subterfuge for a criminal investigation and therefore violative of the fourth amendment. Johnson, 722 F.2d at 528; Merchant, 760 F.2d at 968-69.
 
 
 38
 REVERSED.
 
 
 
 *
 Hon. Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Appellee implies that in this case the probation officer would have conducted the search had police not done so. In fact, no such evidence was presented. When Appellee asked Spicer if she would have ordered a search by probation officers had Dias been unwilling to conduct the search, Appellant objected to the question. The district court sustained the objection. Thus, Spicer was not allowed to testify as to what she would have done had Dias been unwilling to search Appellant's house
 
 
 [2]
 Appellee's citations to United States v. Davis, 932 F.2d 752 (9th Cir.1991), are unpersuasive. Davis addressed whether a probation search exceeded its permissible scope, not whether the search was a subterfuge for a criminal investigation or whether the probation officer was a stalking horse. 932 F.2d at 756-58 & 758 n. 4. Thus, Davis is inapposite